KERN v BLETHEN-COLUNI

Docket No. 210869. Submitted February 9, 2000, at Detroit. Decided March 24, 2000, at 9:15 A.M.

Denise R. Kern and Matthew S. Trusty, through Kern as next friend, brought an action in the Oakland Circuit Court against John L. Blethen-Coluni, seeking damages for a fracture sustained by Trusty in his right femur when he was struck by an automobile driven by the defendant. A jury decided that Trusty had not sustained serious impairment of body function or permanent serious disfigurement, thus precluding recovery of noneconomic damages under the no-fault act, MCL 500.3135(2); MSA 24.13135(2). The plaintiffs moved for a new trial, arguing that pursuant to an amendment of subsection 3135(2) that applies to this case, the issue whether threshold injury, i.e., serious impairment of body function or permanent serious disfigurement, was sustained should have been decided by the court as a matter of law. The court, Denise Langford Morris, J., denied the motion. The plaintiffs appealed.

The Court of Appeals *held*:

1. Under subsection 3135(2), as amended by 1995 PA 222, the issue of threshold injury is a question of law for the court absent a genuine factual dispute that is outcome determinative. Serious impairment of body function means an objectively manifested impairment of an important body function that affects the person's general ability to lead a normal life. Walking is an important body function, the serious impairment of which constitutes a threshold injury. In this case, there were no outcome-determinative genuine factual questions concerning the nature and extent of Trusty's injuries. Those injuries rendered him unable to walk for eleven weeks, caused him to miss school for three weeks, and prevented him from engaging in his normal activities until he recovered. The trial court therefore erred in submitting to the jury the issue of threshold injury and in failing to rule as a matter of law that Trusty had sustained serious impairment of a body function.

2. The record is inadequate to facilitate appellate review of the issue of permanent serious disfigurement. The matter must be remanded for a ruling by the trial court regarding whether Trusty sustained permanent serious disfigurement as a matter of law. If

the trial court finds permanent serious disfigurement, a trial should be held on the issue of damages. If the trial court rules against the plaintiffs, further relief will be considered by the Court of Appeals only if the plaintiffs make an offer of proof in the lower court with photographic or other documentary evidence sufficient to support the plaintiffs' claim on appeal.

Reversed and remanded for further proceedings.

METER, P.J., concurring in part and dissenting in part, agreed that the case must be remanded, but stated that under subsection 3135(2), as amended, the trial court must first determine whether there exists a material factual dispute regarding the nature and extent of Trusty's injuries. Only after concluding that no material factual dispute exists can the trial court decide, as a matter of law, whether serious impairment of body function or permanent serious disfigurement was sustained.

1. INSURANCE — NO-FAULT — SERIOUS IMPAIRMENT OF BODY FUNCTION — PERMANENT SERIOUS DISFIGUREMENT — QUESTIONS OF LAW.

The issue whether a person has sustained serious impairment of body function or permanent serious disfigurement so as to be able to recover under the no-fault act noneconomic damages for injury is a question of law for the court absent a genuine factual dispute that is outcome determinative (MCL 500.3135[2]; MSA 24.13135[2], as amended by 1995 PA 222).

2. INSURANCE — NO-FAULT — SERIOUS IMPAIRMENT OF BODY FUNCTION — QUESTIONS OF LAW.

A court deciding whether impairment of a body function is serious for purposes of the no-fault act should consider the extent of the injury, the treatment required, the duration of disability, and the extent of residual impairment and prognosis for eventual recovery (MCL 500.3135[2], [7]; MSA 24.13135[2], [7]).

*Caputo Brosnan, P.C.* (by *Harold A. Perakis*), for the plaintiffs.

*Harvey Kruse, P.C.* (by *Francis H. Poretta* and *Denise L. Winiarski*), for the defendant.

Before: METER, P.J., and GRIFFIN and OWENS, JJ.

GRIFFIN, J. On May 18, 1996, an accident involving an automobile and a pedestrian occurred at a Royal Oak intersection. On that date, nine-year-old plaintiff

Matthew Scott Trusty was attempting to cross the intersection with his bicycle when defendant John L. Blethen-Coluni, while operating his automobile, turned left into the intersection, striking and injuring the young pedestrian.

As a result of the collision, plaintiff sustained a displaced and somewhat comminuted and oblique fracture of his right femur. Plaintiff was hospitalized for six days (four in traction) and underwent surgery for the installation of an external fixator attached to the outside of his right femur by four pins drilled into the bone. Plaintiff wore the fixator for eleven weeks, during which time he was incapable of walking. During this eleven-week period, plaintiff was either carried, used a wheelchair, or "hobbled" on his other leg. Plaintiff missed three weeks of school because of his hospitalization and initial surgery. On August 5, 1995, plaintiff underwent a second surgery, during which the fixator device and four pins were removed. Thereafter, plaintiff gradually returned to walking and other normal activities of a nine-year-old boy.

I

Through his next friend, Denise R. Kern, plaintiff filed a complaint on July 26, 1996, seeking non-economic damages for his alleged threshold injuries of serious impairment of body function and permanent serious disfigurement. By mistake, mutual to the parties and the court, the case was submitted to the jury regarding all issues including whether plaintiff sustained a threshold injury. This was an error of law because plaintiff's complaint was filed exactly 120 days after March 28, 1996, and therefore the 1995

amendments of the no-fault act (1995 PA 222) were operative. See MCL 500.3135(2); MSA 24.13135(2). In light of the absence of objection, we review for plain error. MRE 103(d). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). See also *Wischmeyer v Schanz*, 449 Mich 469, 483; 536 NW2d 760 (1995).

At trial, the jury received inconsistent jury instructions that set forth both SJI2d 36.01 (the repealed standards of *DiFranco v Pickard*, 427 Mich 32; 398 NW2d 896 [1986]) and SJI2d 36.11 (the purported standards of 1995 PA 222). During its deliberations, the jury expressed confusion regarding the law it should apply in deciding whether plaintiff sustained a threshold injury. A handwritten note from the jury foreman to the trial judge states:

> We are having a hard time qualifying #4 with respect to "*serious* impairment of a body function." Can we have a dictionary and/or some additional counseling on this issue? [Emphasis in original.]

Following the dictates of *DiFranco*, the trial court offered no additional guidance to the jury:

> 1) Dictionary—no.
> 2) You have received all of the court's instruction—please consider as a whole.

Sometime later, the jury rendered the following verdict:

> *Question No. 1*: Was the defendant negligent?
> *Answer*: Yes.

*Question No. 2*: Was the plaintiff injured?

*Answer*: Yes.

*Question No. 3*: Was the defendant's negligence a proximate cause of plaintiff's injury?

*Answer*: Yes.

*Question No. 4*: Did the plaintiff's injury result in serious impairment of a body function or permanent serious disfigurement?

*Answer*: No.

In his motion for a new trial, plaintiff's counsel first advised the trial court that 1995 PA 222 applied to this case and therefore the trial court should rule as a matter of law whether plaintiff's injuries exceeded the no-fault tort threshold. The trial court denied the motion, concluding

> [the court] finds that the issue of whether plaintiff sustained a serious impairment of body function or a permanent serious disfigurement was properly submitted to the jury and furthermore that the jury appropriately reviewed and considered the evidence and determined that plaintiff's injuries did not meet the threshold of serious impairment or disfigurement. Therefore, this Court finds that the jury verdict was not against the great weight of the evidence or contrary to law and plaintiff's motion for a new trial must be denied.

Plaintiff now appeals. We reverse and remand. We hold that plaintiff's femur fracture is a serious impairment of body function as a matter of law. We remand for a new trial on the issue of plaintiff's damages. Additionally, because the appellate record is inadequate for our review de novo of plaintiff's claim of permanent serious disfigurement, we remand for a ruling by the trial court and a new trial on damages if the court finds threshold disfigurement.

II

By enacting 1995 PA 222, the Legislature amended our no-fault automobile insurance act in a number of important respects. Pertinent to this appeal, the Legislature overturned the Supreme Court's *DiFranco* decision by codifying the tort threshold injury standards of *Cassidy v McGovern*, 415 Mich 483; 330 NW2d 22 (1982), overruled by *DiFranco, supra*. One of the major changes of the legislation was to make the determination of threshold injury (serious impairment of body function or permanent serious disfigurement) an issue of law rather than an issue of fact. Considerations of greater uniformity and predictability of the law were argued by the supporters of the legislation:

> Putting the determination of whether the threshold has been met into the hands of the judge (as a matter of law) makes sense for several reasons. . . . It will produce more uniformity in decisions by allowing judges to construct [sic] the statute rather than juries, which are more likely to vary in attitude based on geography or even one jury to the next. Further, the phrase in question is not commonly used, so juries are not likely to have a clear sense of its meaning. [House Legislative Analysis, HB 4341, December 18, 1995, p 3.]

The above legislative analysis[1] echoes the concerns articulated by the *Cassidy* Court:

> We believe several considerations are instructive in determining whether the threshold requirement of "serious impairment of body function" is primarily a phrase present-

---

[1] We recognize that legislative bill analyses are not official statements of legislative intent. Nevertheless, bill analyses may be of probative value. See *Seaton v Wayne Co Prosecutor (On Second Remand)*, 233 Mich App 313, 321, n 3; 590 NW2d 598 (1998), and cases cited therein.

ing a fact question for the trier of fact, or a phrase requiring judicial definition as a matter of law. First, it is not a term commonly used, for which juries would have a clear sense of the intended meaning. . . .

Second, and important especially in conjunction with the first factor, one of the important reasons behind the no-fault act was to reduce litigation in automobile accident cases. Considering that the phrase involved is unspecific and one concerning which reasonable minds can usually differ regarding specific applications, if the interpretation of the phrase is a matter to be left to the trier of fact, a trial would in most instances be required to determine whether the threshold requirements have been met. . . .

Third, we cannot believe that the Legislature, when limiting the continued existence of traditional tort liability to certain specified exceptions, intended that the limits which they created would vary according to the specific jury impaneled or the specific part of the state in which a case was to be tried. Although the requirement of serious impairment of body function lacks specificity, uniformity in its application is to some extent attainable through statutory construction by the appellate courts. Unlike traditional tort litigation where differing views among differing juries are generally acceptable, the question whether tort immunity attaches is not a question which we believe the Legislature intended to leave as primarily a question for the trier of fact. [*Cassidy, supra* at 501-502.]

Before the no-fault act amendments, the Supreme Court held in *DiFranco, supra* at 38: "The question whether the plaintiff suffered a serious impairment of body function must be submitted to the trier of fact whenever the evidence would cause reasonable minds to differ as to the answer." In changing the law in response to *DiFranco*, the Legislature returned the determination of threshold injury to the trial judge as it existed under *Cassidy*.

The Legislature's concern with the unpredictability of jury determinations regarding the no-fault tort threshold is aptly demonstrated in the present case. The jury's confusion regarding the phrase "serious impairment of body function" is documented in the jury's inquiry to the court asking for a dictionary "and some additional counseling on the issue." Among other instructions, the jury was advised that "the terms 'serious,' 'impairment,' and 'body function' have no special or technical meaning in the law and should be considered by you in the ordinary sense of their common usage." This instruction contained in SJI2d 36.01 is incorrect in the context of cases governed by 1995 PA 222. The legislative analysis for the bill not only repeats the *Cassidy* standards, it also emphasizes them:

> That means making the determination of whether the threshold for a lawsuit has been met a question of law for a judge to decide and not for a jury. And it means that the term "serious impairment of body function" would once again refer to "an *objectively manifested* impairment of an *important* body function that affects the person's *general ability to lead his or her normal life.*" [House Legislative Analysis, HB 4341, December 18, 1995, p 2 (emphasis in original).]

Contrary to the standard jury instruction, the term "important body function" *has* special meaning in the law. An important body function is a function of the body that affects the person's general ability to live a normal life.[2] *Cassidy, supra* at 505. As the Supreme

---

[2] The *Cassidy* Court explained:

This conclusion [that walking is an important body function] is not affected one way or another by the fact that Leo Cassidy is a

Court stated, "[w]alking is an important body function, the serious impairment of which constitutes" a threshold injury. *Id.* Further, for recovery to be realized, the injury must be "objectively manifested." *Id.*

In determining whether the impairment of the important body function is "serious," the court should consider the following nonexhaustive list of factors: extent of the injury, treatment required, duration of disability, and extent of residual impairment and prognosis for eventual recovery. *Hermann v Haney,* 98 Mich App 445, 449; 296 NW2d 278 (1980), aff'd 415 Mich 483; 330 NW2d 22 (1982). Finally, although the injury threshold is a significant obstacle to tort recovery, *Cassidy, supra* at 503, "an injury need not be permanent to be serious." *Id.* at 505.

Consistent with the above standards, the no-fault act now defines serious impairment of body function as follows:

> As used in this section, "serious impairment of body function" means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life. [MCL 500.3135(7); MSA 24.13135(7).]

### III

Absent an outcome-determinative genuine factual dispute, the issue of threshold injury is now a question of law for the court. MCL 500.3135; MSA

---

potato farmer who must be on his feet for long hours. We believe that the Legislature intended an objective standard that looks to the effect of an injury on the person's general ability to live a normal life. [*Id.* at 505.]

24.13135. On appeal, we review questions of law de novo. *Henderson v State Farm Fire & Casualty Co*, 460 Mich 348, 353; 596 NW2d 190 (1999); *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998).

Because the Legislature has returned to the standards of *Cassidy*, we find *Cassidy* and its progeny instructive for the present case. In particular, we follow and adopt the analysis of *Cassidy* era cases set forth in *Burk v Warren (After Remand)*, 137 Mich App 715; 359 NW2d 541 (1984).

In *Cassidy*, itself, the Supreme Court held plaintiff Cassidy's injuries were a serious impairment of body function as a matter of law. Cassidy's injuries were "complete breaks of both bones in his lower right leg for which he was hospitalized for eighteen days and wore casts for seven months." Further, the plaintiff suffered dizzy spells affecting his mobility and minor residual effects lasting approximately 1½ years after the accident.

Five months after the *Cassidy* decision, this Court in *LaHousse v Hess*, 125 Mich App 14; 336 NW2d 219 (1983), addressed injuries substantially similar to those of the present plaintiff. In *LaHousse*, the plaintiff sustained a broken clavicle and a fracture of her left femur, the latter injury requiring surgery to insert a steel rod. Applying *Cassidy, supra,* our Court ruled the plaintiff's femur fracture was a serious impairment of body function as a matter of law:

> Plaintiff suffered an injury to her left leg interfering with her ability to walk. As the Court said in *Cassidy, supra*, p 505, "[w]alking is an important body function". Moreover, *we find that, as a matter of law, plaintiff suffered a serious impairment of her ability to walk.* She was hospitalized for five days with her left leg in traction. For three

months afterwards, she was unable to move herself about without the aid of a wheelchair, a walker or crutches.

The trial court erred, therefore, by submitting the resultant "serious impairment" question to the jury. [*LaHousse, supra* at 18-19 (emphasis added).]

The present case similarly involves a serious femur fracture and plaintiff's inability to walk for three months. Walking is an important body function. Although plaintiff had a good recovery, "an injury need not be permanent to be serious." *Cassidy, supra* at 505. In light of the seriousness of the initial injury, the treatment required, and the duration of disability, we hold that plaintiff sustained a serious impairment of body function.

As an argument for affirmance, defendant asserts that the trial court correctly submitted the threshold determination to the jury because genuine questions of material fact existed regarding the nature and extent of plaintiff's injuries. We disagree. Here, there was no independent medical examination. The only testimony regarding the nature and extent of plaintiff's injuries came from plaintiff, his parents, and his treating physician, Dr. Thomas Ditkoff. Although defendant seizes on minor discrepancies between plaintiff's testimony and that of his treating physician, we find no genuine outcome-determinative issue of fact. Approximately four months after the accident, Dr. Ditkoff noted that plaintiff's fracture appeared to be well healed and plaintiff had an excellent range of motion with almost full flexion. However, Dr. Ditkoff advised plaintiff to limit his activities for the next three months. The nine-year-old plaintiff was instructed that he could do "a little bit of running and bicycling and things of that type, but that he should

avoid activities such as playground equipment where he might fall or jump off." Assuming plaintiff's recovery progressed normally, Dr. Ditkoff expected plaintiff to resume unrestricted activities seven months after the accident.

Contrary to defendant's assertions, the testimony of plaintiff and his treating physician do not conflict in any material respect. Accordingly, a remand for a finding by the trial court on whether a genuine material factual dispute exists on the threshold issue is not necessary. Cf. *May v Sommerfield*, 239 Mich App 197; 607 NW2d 422 (1999).[3] Plaintiff testified at trial (eighteen months after the accident) that his activities were unrestricted but his leg "kind of bothers me when I run on it too much or sleep on it wrong." Plaintiff's occasional ache in his thigh is minor and, therefore, immaterial to the determination of *serious* impairment of body function. For these reasons, the trial court erred in submitting the threshold issue to the jury and in failing to rule as a matter of law in response to plaintiff's motion for a new trial.

IV

The issue of permanent serious disfigurement is more problematic. Again, under 1995 PA 222, the determination whether a disfigurement constitutes "permanent serious disfigurement" is a question of law absent a genuine outcome-determinative factual dispute. However, the trial court refused to rule, as a matter of law, deferring to the jury. Unfortunately, the record is inadequate to facilitate our review de novo.

---

[3] Because our review is de novo, we question the relief ordered in *May*.

In this case, plaintiff's four surgical scars were depicted in a jury view and described in detail. However, no photographs or video of plaintiff's disfigurement are contained in the lower court record. Accordingly, we find it necessary to remand to the trial court for a ruling. If the trial court finds permanent serious disfigurement, a trial should be held on the issue of damages. If the trial court rules against plaintiff, further relief will be considered by this Court only if plaintiff makes an offer of proof in the lower court with photographic or other documentary evidence sufficient to support plaintiff's claim on appeal. MCR 7.210(A), 7.216(A)(9).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

OWENS, J., concurred.

METER, P.J. (*concurring in part and dissenting in part*). While I agree with the majority that a remand to the trial court in this case is necessary, I disagree with the majority regarding the actions the trial court must take on remand. The majority concludes that a remand is necessary so that the trial court can (1) conduct a trial on the issue of plaintiff's damages related to the "serious impairment of body function," and (2) make a finding regarding whether plaintiff sustained a "permanent serious disfigurement" and, if appropriate, conduct a trial on plaintiff's damages related to this disfigurement.

However, MCL 500.3135(2)(a); MSA 24.13135(2)(a), as amended by 1995 PA 222, states:

(a) The issues of whether an injured person has suffered serious impairment of body function or permanent serious

disfigurement are questions of law for the court if the court
finds either of the following:

(i) There is no factual dispute concerning the nature and
extent of the person's injuries.

(ii) There is a factual dispute concerning the nature and
extent of the person's injuries, but the dispute is not mate-
rial to the determination as to whether the person has suf-
fered a serious impairment of body function or serious per-
manent serious disfigurement.

In *May v Sommerfield*, 239 Mich App 197, 201-202;
607 NW2d 422 (1999), this Court construed the above
statute to mean that a determination regarding thresh-
old issues cannot be made by either this Court or the
lower court before the lower court has determined
whether a factual dispute under the statute exists.
Accordingly, I would remand the instant case to the
trial court to determine whether a material factual
dispute regarding the nature and extent of plaintiff's
injuries exists. Only after concluding that no such fac-
tual dispute exists should the trial court address, as a
matter of law, whether plaintiff suffered a "serious
impairment of body function" or a "permanent serious
disfigurement."

In contrast to the majority, I do not believe that it
is our place, as an appellate court, to make the deter-
mination that no factual dispute exists under MCL
500.3135(2)(a); MSA 24.13135(2)(a) before the trial
court has addressed this question, even if it appears
to us that no such dispute exists. Indeed, this princi-
ple (that it is the *trial court's* duty to make the "fac-
tual findings" under MCL 500.3135[2][a]; MSA
24.13135[2][a]) was expressed in *May*, and we are
obligated to follow *May* under MCR 7.215(H).

I would remand this case for the trial court to
decide whether a material factual dispute under MCL

500.3135(2)(a); MSA 24.13135(2)(a) exists. Only if the trial court were to answer this question in the negative should it address, as a matter of law, whether plaintiff suffered a "serious impairment of body function" or a "permanent serious disfigurement." If the trial court were then to find a "serious impairment of body function" or a "permanent serious disfigurement," a new trial on damages would be warranted.