STRAUB v COLLETTE

Docket No. 236505. Submitted December 17, 2002, at Lansing. Decided December 20, 2002, at 9:05 A.M. Leave to appeal sought.

Daniel L. Straub brought an action in the Monroe Circuit Court against Phillip M. Collette and Teresa M. Heil-Wylie, seeking noneconomic damages for injury to his nondominant left hand in an accident involving an automobile operated by Collette and owned by the defendants. Given undisputed evidence that the plaintiff for four months could not perform as a guitarist in a band that performed almost every weekend and practiced three or four times a week and that the plaintiff for three months was limited in his ability to work full-time, the court, Michael W. LaBeau, J., granted summary disposition for the defendants. The court ruled that the plaintiff had not sustained a serious impairment of body function under the no-fault act and therefore could not recover damages. The plaintiff appealed.

The Court of Appeals held:

1. The no-fault act generally abolished tort liability with regard to the use of a motor vehicle. A statutory exception to this general rule provides that tort liability remains for noneconomic loss if the injured person has suffered "serious impairment of body function." The issue whether a person has suffered a serious impairment of body function is a question of law for the court to decide where, as here, there is no factual dispute regarding the nature and extent of the injuries. The no-fault act defines "serious impairment of body function" as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." An injury does not need to be permanent in order to constitute a serious impairment of body function.

2. In this case, the plaintiff's injuries were objectively manifested and they affected his general ability to lead his normal life. The injuries therefore constituted a serious impairment of body function.

Reversed and remanded for further proceedings.

*Law Offices of Lawrence S. Katkowsky, P.C.* (by *Lawrence S. Katkowsky* and *Dondi R.. Vesprini*), for the plaintiff.

*Ready, Sullivan & Ready* (by *Durwood L. Hutchinson*) for the defendant.

Before: HOOD, P.J., and SMOLENSKI and KELLY, JJ.

SMOLENSKI, J. Plaintiff appeals as of right from a trial court order granting summary disposition under MCR 2.116(C)(10) in favor of defendants. We reverse. This case is being decided without oral argument pursuant to MCR 7.214(E).

This case arises from a traffic accident that occurred on September 19, 1999. Plaintiff was driving his motorcycle while defendant Phillip Collette was driving a car owned by both defendants. Collette turned onto a street in front of plaintiff, resulting in a collision. Importantly to this appeal, plaintiff suffered injuries to his nondominant left hand in the accident. In particular, he was diagnosed with a "closed left fifth metacarpal displaced neck fracture," known less formally as a "boxer's fracture," as well as open wounds, including extensor tendon injuries, to his middle and ring fingers. Plaintiff underwent outpatient surgery, attended some physical therapy, and wore a cast for a time as a result of the injuries. Also, plaintiff was off work from his employment as a "cable lineman" until he returned to work part-time in November 1999.

In addition, according to plaintiff's undisputed deposition testimony, at the time of the accident, plaintiff had been playing the bass guitar in a band that performed almost every Friday or Saturday night, mostly

at nightclubs and private clubs, and that additionally practiced three or four times a week. However, plaintiff did not play in the band from the time of the accident until mid-January 2000 because he "didn't have the strength in [his] fingers. They wouldn't work." Plaintiff, who lived alone, also had difficulty with household and personal tasks until December 1999 and with operating his "bow shop" and with processing deer during the 1999 deer season.

Plaintiff returned to work full-time on December 14, 1999. However, he testified at his deposition that he has a continuing inability to completely straighten out his middle finger or to completely close his left hand.

Plaintiff argues that the trial court erred by granting summary disposition in favor of defendants under MCR 2.116(C)(10). We agree. In reviewing a grant of summary disposition under MCR 2.116(C)(10), we consider de novo the documentary evidence in a light most favorable to the nonmoving party to decide whether a genuine issue of material fact exists. *Schuster Constr Services, Inc v Painia Dev Corp*, 251 Mich App 227, 230; 651 NW2d 749 (2002). However, in this case, the facts essential to our decision are undisputed with the real question being the proper legal characterization of those facts, particularly whether the left hand injuries suffered by plaintiff in the traffic accident underlying this case constituted a "serious impairment of body function."

The no-fault act generally abolished tort liability with regard to the use of a motor vehicle. MCL 500.3135(3). However, a statutory exception to this general rule provides that tort liability remains for noneconomic loss if the injured person has suffered

"serious impairment of body function." MCL 500.3135(1). The issue whether a person has suffered a serious impairment of body function is a question of law for the court to decide where, as in the present case, there is no factual dispute regarding the nature and extent of the injuries. MCL 500.3135(2)(a); *Kreiner v Fischer*, 251 Mich App 513, 515; 651 NW2d 433 (2002). MCL 500.3135(7) defines "serious impairment of body function" as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." Given the nature of plaintiff's left hand injuries and the medical treatment he received, it is obvious that the injuries were objectively manifested. Further, it is plain that the ability to use one's hand is an important body function. The real question in this case, and the point disputed by the parties, is whether the left hand injuries affected plaintiff's general ability to lead a normal life so as to constitute a serious impairment of body function. Because we believe that the left hand injuries in this case constituted a serious impairment of body function for some period, we conclude that the trial court erred in granting summary disposition in favor of defendants.

An injury does not need to be permanent in order to constitute a serious impairment of body function. *Kern v Blethen-Coluni*, 240 Mich App 333, 343; 612 NW2d 838 (2000). Thus, while we believe it is clear that plaintiff was free of any serious impairment of body function by mid-January 2000, that does not necessarily mean that there was no serious impairment of body function based on the effects of his left hand injuries between the occurrence of the collision on September 19, 1999, and mid-January 2000.

Turning to the relevant period between September 1999 and January 2000, we conclude that plaintiff's left hand injuries affected his general ability to lead his normal life and, accordingly, that he suffered a serious impairment of body function. In determining whether an impairment of an important body function is "serious," a court should consider these nonexhaustive factors: "extent of the injury, treatment required, duration of disability, and extent of residual impairment and prognosis for eventual recovery." *Kern, supra* at 341. In this case, the undisputed evidence indicated that the plaintiff had regularly performed as a musician playing the bass guitar, but was unable to do so for about four months as a result of the injuries that he suffered in the accident. Given plaintiff's undisputed deposition testimony that he performed in a band that gave performances almost every weekend and additionally practiced three or four times a week, being able to play the bass guitar was a major part of plaintiff's normal life. Further, the period of about four months that plaintiff could not perform musically was a significant amount of time. In addition, plaintiff was limited in his ability to work at his full-time employment for about three months. In deciding whether injuries constitute a serious impairment of body function, it is appropriate to compare a plaintiff's "lifestyle before and after the accident." *May v Sommerfield (After Remand)*, 240 Mich App 504, 506; 617 NW2d 920 (2000). It is also important to bear in mind that the plain language of MCL 500.3135(7) provides a "subjective" definition in that the determination centers on the effect on the particular injured party's normal life, see *May, supra,* as opposed to the typical effect of injuries of a certain type on people

generally. Applying these principles to the present case, we conclude that plaintiff's injuries constituted a serious impairment of body function because, albeit for a relatively limited time, they did affect his general ability to lead his normal life, particularly his ability to perform musically and to work, both of which were integral parts of his normal life. See *Kreiner, supra* at 518-519 (considering evidence that the plaintiff in that case was limited in the time he could work and unable to participate in "certain types of recreational hunting" as supporting a conclusion that he suffered a serious impairment of body function). It is immaterial that the same injuries if suffered by a hypothetical person, who led a more sedentary lifestyle than plaintiff or who did not rely on the use of the nondominant hand as much as plaintiff did, might not constitute a serious impairment of body function.

The trial court's view of plaintiff's "guitar playing" as an "extrinsic" consideration seems to incorrectly consider whether plaintiff's injuries were serious in themselves, i.e., the general seriousness of such injuries, rather than how the injuries affected plaintiff's general ability to lead his normal life. See *id.* at 518 (erroneous for trial court to consider whether impairment was "serious enough" where unambiguous language of MCL 500.3135[7] directs consideration of whether impairment "affects the person's general ability to lead his or her normal life."). Accordingly, we conclude that the trial court erred by granting summary disposition in favor of defendants on the basis of its effective conclusion that plaintiff did not present evidence of a serious impairment of body function.

We reverse the trial court's grant of summary disposition in favor of defendants and remand this case to the trial court for further appropriate proceedings consistent with this opinion. We do not retain jurisdiction.