KREINER v FISCHER (ON REMAND)

Docket No. 225640. Submitted May 20, 2003, at Lansing. Decided June 3, 2003, at 9:00 A.M. Leave to appeal sought.

Richard A. Kreiner brought an action in the Lapeer Circuit Court against Robert O. Fischer, seeking noneconomic damages for an alleged serious impairment of body function sustained in an automobile accident. The court, Nick O. Holowka, J., granted summary disposition for the defendant. The Court of Appeals reversed and remanded the matter to the trial court, holding that the trial court erred in concluding that the plaintiff's impairment of body function was not serious enough to meet the tort threshold. 251 Mich App 513 (2002). The defendant sought leave to appeal, and the Supreme Court, in lieu of granting leave to appeal, vacated the judgment of the Court of Appeals and remanded to the Court of Appeals for further proceedings. 468 Mich 884 (2003). The Supreme Court noted that the Court of Appeals concluded that the plaintiff is not required to show that his impairment seriously affects his ability to lead his normal life in order to meet the tort threshold and that, if the facts as alleged by the plaintiff are true, his impairment has affected his general ability to lead his normal life. The Supreme Court then stated that both the trial court and the Court of Appeals erred and noted that although a *serious* effect is not required, *any* effect does not suffice either. Instead, the effect must be on one's *general* ability to lead his normal life. The matter was remanded to the Court of Appeals for it to consider whether the plaintiff's impairment affects his general ability to lead his normal life.

On remand, the Court of Appeals *held*:

1. "*Any*" effect does not suffice to establish a serious impairment of body function under MCL 500.3135; rather, the effect must relate to a person's general ability to lead a normal life.

2. A person's general ability to lead a normal life can be affected by an injury that impacts the person's ability to work at a job, where the job plays a significant role in that individual's normal life, such as in this case. An injury affecting employment can affect a person's life in general. The plaintiff's assertions, if true, that the injury limited his ability to walk, to undertake certain physical

movements, and to engage in recreational hunting and also limited his employment show that the plaintiff suffered a serious impairment of body function. The plaintiff's limitations, if proved, are sufficient to support a finding that his impairment affected his general ability to lead a normal life.

Reversed and remanded.

*Cochran, Foley & Associates, P.C.* (by *Terry L. Cochran*), and *Sinas, Dramis, Brake, Boughton & McIntyre, P.C.* (by *George T. Sinas*), for the plaintiff.

*Garan, Lucow & Miller, P.C.* (by *Clare M. Cylkowski, William J. Brickley,* and *Daniel S. Saylor*), for the defendant.

ON REMAND

Before: WHITE, P.J., and MURPHY and FITZGERALD, JJ.

MURPHY, J. This appeal, involving the issue whether plaintiff suffered a "serious impairment of body function," as defined in MCL 500.3135(7), is once again before us by order of the Michigan Supreme Court, which, in lieu of granting leave to appeal, vacated our previous decision, *Kreiner v Fischer,* 251 Mich App 513; 651 NW2d 433 (2002), and remanded the matter for further proceedings consistent with the order. 468 Mich 884 (2003). The Supreme Court remand order provided, in pertinent part:

The no-fault act, MCL 500.3135(7), defines "serious impairment of body function" as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." The circuit court granted defendant's motion for summary disposition, concluding that plaintiff's impairment is not "serious enough" to meet the tort threshold. The Court of Appeals reversed, concluding that plaintiff is not required to

show that his impairment "seriously" affects his ability to lead his normal life in order to meet the tort threshold. The Court of Appeals then concluded that, if the facts as alleged by plaintiff are true, his impairment has affected his general ability to lead his normal life. In our judgment, both the circuit court and the Court of Appeals erred. Although a *serious* effect is not required, *any* effect does not suffice either. Instead, the effect must be on one's *general* ability to lead his normal life. Because the Supreme Court believes that neither of the lower courts accurately addressed this issue, the case is remanded to the Court of Appeals for it to consider whether plaintiff's impairment affects his general ability to lead his normal life. [*Id.* at 884-885 (emphasis in original).]

After consideration of the Supreme Court's remand order, we again reverse the trial court's judgment granting defendant's motion for summary disposition. Our Supreme Court's order does not change in any manner a significant portion of our analysis in the previous opinion; therefore, because the Supreme Court's order vacated our entire opinion, we find it appropriate and necessary to incorporate and adopt here that portion of our earlier opinion. We stated in *Kreiner, supra* at 514-518, in part:

Under the no-fault act, a plaintiff may recover noneconomic losses only if the plaintiff has suffered "death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1).

Pursuant to MCL 500.3135(2)(a), the issue whether an individual has suffered serious impairment of body function is a question of law for the trial court to decide if the court finds either of the following:

(i) There is no factual dispute concerning the nature and extent of the person's injuries.

(ii) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not mate-

rial to the determination as to whether the person has suffered a serious impairment of body function or permanent serious disfigurement.

Issues of law, as well as rulings on motions for summary disposition, are reviewed by this Court de novo. *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 582-583; 640 NW2d 321 (2001).

We read MCL 500.3135(2) as requiring a trial court to determine, as a matter of law, whether a plaintiff has suffered serious impairment of body function where there is no factual dispute, or where the facts are in dispute, but the disputed facts are not outcome-determinative with respect to a proper resolution of determining serious impairment. *Kern v Blethen-Columi*, 240 Mich App 333, 341-342; 612 NW2d 838 (2000). Because MCL 500.3135(2) is not all encompassing, the Legislature apparently intended that in limited circumstances, a jury would resolve material or outcome-determinative factual disputes, and in so doing, would determine whether a plaintiff suffered a serious impairment of body function.[1] See *Kern, supra* at 341-344.

MCL 500.3135(7) provides: "As used in this section, 'serious impairment of body function' means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life."

Questions regarding statutory interpretation are reviewed de novo. *In re MCI Telecommunications Complaint*, 460 Mich 396, 413; 596 NW2d 164 (1999). Recently our Supreme Court in *Roberts v Mecosta Co General Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002), reaffirmed the following rules concerning statutory interpretation:

"An anchoring rule of jurisprudence, and the foremost rule of statutory construction, is that courts are to effect the intent of the Legislature. *People v Wager*, 460 Mich 118, 123, n 7; 594 NW2d 487 (1999). To do so, we begin with an examination of the language of the statute. *Wickens v Oakwood Healthcare System*, 465 Mich 53, 60; 631 NW2d 686 (2001). If the statute's language is clear and unambiguous, then we assume that the Legislature intended its plain meaning and the statute is enforced as written. *People v*

*Stone,* 463 Mich 558, 562; 621 NW2d 702 (2001). A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. *Omne Financial, Inc v Shacks, Inc,* 460 Mich 305, 311; 596 NW2d 591 (1999)."

The statutory definition of serious impairment in MCL 500.3135(7) can be broken down into three requirements that must be established in order to find a serious impairment of body function. First, there must be an objectively manifested impairment. Second, the impairment must be of an important body function. Third, the impairment must affect a person's general ability to lead his or her normal life.

The facts not being contested for purposes of determining serious impairment of body function indicate that following the motor vehicle accident, plaintiff complained of lower back, right hip, and right leg pain. Objective medical tests of plaintiff's back indicated that plaintiff had radiculopathy, or a malfunction, of the L4 nerve root, grade one to grade two spondylolysis (arthritic like changes) between the L5 and S1 locations, degenerative disc disease, and facet degenerative changes.[2] Plaintiff's doctor also found, on examination, sciatic nerve irritation in plaintiff's right leg. The doctor noted that plaintiff had tenderness and stiffness in the lumbar region. The doctor further indicated that the L4 radiculopathy could possibly heal, but the degeneration of plaintiff's spine is permanent.[3] A number of treatments were attempted, but plaintiff did not respond to physical therapy, he did not respond to nerve block injections, and he did not respond to pain medication. Plaintiff's doctor advised plaintiff to avoid lifting anything over fifteen pounds and to avoid unnecessary bending and twisting. Plaintiff had worked as a carpenter for about twelve years, doing "mostly remodeling, decks, a little bit of everything; roofing, siding stuff like that."

The trial court found that plaintiff's injuries were objectively manifested on the basis of the medical examinations and tests, and that the impairment involved an important body function, thereby satisfying the first two prongs of the

statutory definition of serious impairment of body function. We agree with the trial court that plaintiff established an objectively manifested impairment of an important body function on the basis of the uncontested medical evidence presented by plaintiff.[4]

---

[1] The *Kern* panel stated that "[a]bsent an outcome-determinative genuine factual dispute, the issue of threshold injury is now a question of law for the court." *Kern, supra* at 341. In *Kern, id.* at 343-344, this Court rejected the defendant's assertion that the trial court correctly submitted the threshold determination to the jury because issues of material fact existed. This Court did not simply dispose of the issue on the basis that MCL 500.3135 no longer allowed a jury to determine serious impairment of a body function but it instead ruled that there was no genuine issue of fact to be decided. *Kern, supra* at 343-344. On the basis of *Kern* and the plain language of MCL 500.3134(2), we can only conclude that a jury will become involved in situations where there is a material factual dispute.

[2] Plaintiff's doctor testified that one of the most common causes for degeneration in the discs is trauma, especially in young people because degeneration typically begins at age sixty or seventy. Plaintiff was thirty-four years old at the time of the accident.

[3] Plaintiff's doctor stated that the L4 radiculopathy can be permanent, or it can be repaired, "because we're talking about irritation to a nerve and irritation could be caused from direct or a blunt trauma to the nerve root at the time of the accident."

[4] The movement of one's back is an important body function. *Shaw v Martin*, 155 Mich App 89, 96; 399 NW2d 450 (1986). The objective manifestations of a back injury can be established through x-rays indicating an abnormal spine. *Sherrell v Bugaski*, 140 Mich App 708, 711; 364 NW2d 684 (1984). Here, a magnetic resonance imaging (MRI) examination and an electromyography (EMG) showed the degeneration in the discs and radiculopathy. Plaintiff's doctor testified that these are objective tests.

At this point in our prior opinion, we began our review and analysis of the issue that has raised a concern for our Supreme Court as indicated in the Court's remand order. In *Kreiner, supra* at 518, we stated:

> [T]he trial court ruled that as a matter of law the impairment was not "serious enough" to impinge on plaintiff's ability to lead a normal life. This was error. The third prong of the statutory definition explicitly requires only that the impairment "affect[] the person's general ability to lead his or her normal life."[5] MCL 500.3135(7) does not require any additional proof. It would be improper for us to read any more requirements, limitations, or language into the unambiguous statutory definition. *Roberts, supra* at 63.

---

[5] Plaintiff's doctor testified that one of the most common causes for degeneration in the discs is trauma, especially in young people because degeneration typically begins at age sixty or seventy. Plaintiff was thirty-four years old at the time of the accident.

---

Our Supreme Court, in its remand order, clearly indicated its agreement with our conclusion that a *serious* effect on a person's general ability to lead his or her normal life is not required under MCL 500.3135(7) in order to establish a serious impairment of body function. In reviewing our prior opinion, we did not state that *any* effect will suffice, but rather that "[t]he third prong of the statutory definition explicitly requires only that the impairment 'affect[] the person's general ability to lead his or her normal life.'" *Kreiner, supra* at 518, quoting MCL 500.3135(7) (omission in original). To the extent that our earlier opinion can be read to implicitly suggest that *any* effect will suffice, and consistent with the Supreme

Court's remand order, we now make clear that *any* effect does not suffice to establish a serious impairment of body function under MCL 500.3135, rather the effect must relate to a person's general ability to lead his or her normal life. This leads to the issue regarding the meaning of the phrase "affects the person's general ability to lead his or her normal life." MCL 500.3135(7).

The Supreme Court's remand order stated that the effect of the injury must be on one's *general* ability to lead his or her normal life. The Court emphasized the word "general," thereby indicating that we had failed to properly take the term into consideration in our analysis. The Supreme Court did not expand or explain in any detail its position. Once again, we believe that we addressed this issue in our prior opinion, *Kreiner, supra* at 518-519, wherein we stated:

> The plaintiff's deposition testimony indicated that, after the accident, he continued to work as a carpenter, which forced him to perform some tasks that were painful, and the pain limited his time to work on a project. Plaintiff stated that he could no longer work eight hours a day but rather is limited to six hours a day, that he can no longer do roofing work, that he can only do ladder work for twenty minutes at a time, that he cannot lift more than eighty pounds, that he cannot walk more than one-half mile, and that he can no longer participate in certain types of recreational hunting.
>
> If these facts were not in dispute, we would find that they satisfy the third prong of the statutory definition, and plaintiff would be entitled to summary disposition on the issue whether he suffered a serious impairment of body function pursuant to MCL 500.3135(2)(a)(i), contrary to the trial court's ruling.[6]

[6] Plaintiff's normal life consisted of, in large part, working as a carpenter. Plaintiff's employment was not an insignificant and occasional event in his life but was instead a part of his normal routine. If plaintiff's testimony is true, the impairment "affected" his general ability to lead his normal life by limiting his activities as a carpenter. Plaintiff's ability to work a full eight-hour day was reduced by twenty-five percent, and he testified he could no longer accept roofing jobs. Plaintiff was allegedly further limited in performing his job by weight and movement restrictions.

We find that one's general ability to lead his or her normal life can be affected by an injury that impacts the person's ability to work at a job, where the job plays a significant role in that individual's normal life, such as in the case at bar. Employment or one's livelihood, for a vast majority of people, constitutes an extremely important and major part of a person's life. Whether it be wrong or right, our worth as individuals in society is often measured by our employment. Losing the ability to work can be devastating; employment, regardless of income issues, is important to a sense of purpose and a feeling of vitality. For those working a standard forty-hour work week, a quarter of their lifetime before retirement is devoted to time spent on the job. An injury affecting one's employment and ability to work, under the right factual circumstances, can be equated to affecting the person's *general* ability to lead his or her normal life. For many, life in general revolves around a job and work. It would be illogical to conclude that where a person loses the ability to work because of an injury resulting from a motor-vehicle collision, after being gain-

fully employed, the person's life after the accident, in general, would be unaffected.

The Supreme Court's remand order can be read to require that when considering a person's "general" ability to lead a normal life, the focus must be on multiple aspects of the person's life, i.e., home life, relationships, daily activities, recreational activities, and employment, and not solely on one area of the person's life such as employment. However, our discussion in the preceding paragraph regarding the significance of employment is not contrary to such a position. The employment facet of a person's life cannot be viewed in a vacuum; the inability to work necessarily affects many aspects and areas of a person's life outside the job itself. There can be no doubt that the inability to work affects home life and relationships and creates and places monetary limits on daily and recreational activities. As such, an injury impacting employment can affect a person's life in general. Moreover, injuries affecting the ability to work, by their very nature, often place physical limitations on numerous aspects of a person's life.

Here, there was documentary evidence presented by plaintiff that his ability to walk, undertake certain physical movements, and engage in recreational hunting was limited by the injury. These limitations along with plaintiff's alleged employment limitations, if true, indicate that plaintiff suffered a serious impairment of body function under § 3135.

Because plaintiff remained employed and was working after the injury, the Supreme Court's remand order might be read to suggest that the effect on one's employment must be sufficiently serious in order to properly conclude that a person's general ability to

lead his or her normal life has been affected. However, such a reading would be contrary to the Supreme Court's own determination that a serious effect is not required. Nevertheless, there was documentary evidence presented indicating that plaintiff's ability to work a full eight-hour day was reduced by twenty-five percent, that he could no longer do roofing jobs, that ladder work was limited, and that there were weight and movement restrictions. These limitations, if proved, are significant enough to support a finding that plaintiff's impairment affected his general ability to lead his normal life.

With a minor modification in the language, as reflected by and contained in brackets, and additional guidance from this opinion, we incorporate and adopt our previous conclusion, wherein we stated:

> For purposes of clarity on remand, we provide the following direction to the trial court. The court shall determine whether there are material issues of fact regarding plaintiff's claims relative to the effect of the injury on his [general] ability to [lead his normal life]. In doing so, the court shall consider the admissibility of the videotape offered by defendant. If the court determines that there are no material factual disputes regarding plaintiff's claimed limitations, then the court shall grant summary disposition to plaintiff on the threshold issue of serious impairment of body function. If the court determines that there are factual disputes regarding plaintiff's claimed limitations, then the matter shall be submitted to the jury. [*Kreiner, supra* at 519.]

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.