STRAUB v COLLETTE (ON REMAND)

Docket No. 236505. Submitted July 21, 2003, at Lansing. Decided September 16, 2003, at 9:10 A.M. Leave to appeal granted, 469 Mich 948.

Daniel L. Straub brought an action in the Monroe Circuit Court against Phillip M. Collette and Teresa M. Heil-Wylie, seeking damages, as allowed under the no-fault act, MCL 500.3101 *et seq.*, for injuries to his nondominant left hand sustained in an automobile accident that involved a vehicle driven by Collette. The court, Michael W. LaBeau, J., granted summary disposition in favor of the defendants, concluding that the plaintiff had not suffered a "serious impairment of body function" under MCL 500.3135(7). On appeal by the plaintiff, the Court of Appeals, HOOD, P.J., and SMOLENSKI and KELLY, JJ., reversed the judgment of the trial court, concluding that the plaintiff had suffered a serious impairment of body function. 254 Mich App 454 (2002). The Supreme Court, in lieu of granting leave to appeal, vacated the opinion of the Court of Appeals and remanded the matter to the Court of Appeals for consideration in light of the Supreme Court's order of remand in *Kreiner v Fischer*, 468 Mich 884 (2003). 468 Mich 918 (2003).

On remand, the Court of Appeals *held*:

In determining whether a plaintiff suffered a "serious impairment of body function" under subsection 3135(7) of the no-fault act, the existence of the impairment is measured by an objective standard and the effect of the impairment on the injured person is measured by a subjective standard. Here, the question is whether the plaintiff's injuries affected his general ability to lead his normal life. In this regard, the trial court erred in applying an objective standard. Although not every injury that results in a plaintiff losing the ability to work will constitute a "serious impairment of body function," after reviewing all aspects of this plaintiff's lifestyle before and after the accident, the facts establish that he suffered a serious impairment of body function. Because of the injuries to his hand, which required two surgeries, the plaintiff was off work for several months and he had significant difficulty performing routine household and personal tasks. Furthermore, he had trouble operating his "bow shop" and processing deer, and could not play bass guitar for the band that he regularly practiced and performed with before the

accident. The loss of the use of his left hand for three months significantly affected the plaintiff's ability to lead his normal life, and constituted a serious impairment of body function as a matter of law. The trial court's judgment granting summary disposition is reversed, and the matter is remanded to the trial court for further proceedings.

Reversed and remanded.

STATUTES — NO-FAULT ACT — SERIOUS IMPAIRMENT OF BODY FUNCTION.

In determining whether a person suffered a serious impairment of body function for purposes of the no-fault act, MCL 500.3101 *et seq.*, the alleged impairment must affect the person's general ability to lead his or her normal life; in measuring the effect of the impairment, it is appropriate to compare all aspects of the person's lifestyle before and after the accident. (MCL 500.3135[7].)

*Law Offices of Lawrence S. Katkowsky, P.C.* (by *Lawrence S. Katkowsky* and *Dondi R. Vesprini*), for the plaintiff.

*Willingham & Coté, P.C.* (by *John A. Yeager* and *Curtis R. Hadley*), for the defendant on appeal.

ON REMAND

Before: SMOLENSKI, P.J., and WHITE[1] and KELLY, JJ.

SMOLENSKI, P.J. This appeal, involving the issue whether plaintiff Daniel L. Straub suffered a "serious impairment of body function," as defined in MCL 500.3135(7) of the no fault act, is once again before us by order of the Michigan Supreme Court, which, in lieu of granting leave to appeal, vacated our previous decision, *Straub v Collette*, 254 Mich App 454; 657 NW2d 178 (2002), and remanded the matter for consideration in light of its order in *Kreiner v Fischer*,

---

[1] Judge HELENE N. WHITE was substituted on remand after the retirement of Judge HAROLD HOOD, who was on the original panel of judges.

468 Mich 884 (2003). 468 Mich 918 (2003). The
Supreme Court order of remand in *Kreiner* stated, in
pertinent part:

> The no-fault act, MCL 500.3135(7), defines "serious
> impairment of body function" as "an objectively manifested
> impairment of an important body function that affects the
> person's general ability to lead his or her normal life." The
> circuit court granted defendant's motion for summary dis-
> position, concluding that plaintiff's impairment is not "seri-
> ous enough" to meet the tort threshold. The Court of
> Appeals reversed, concluding that plaintiff is not required to
> show that his impairment "seriously" affects his ability to
> lead his normal life in order to meet the tort threshold. The
> Court of Appeals then concluded that, if the facts as alleged
> by plaintiff are true, his impairment has affected his general
> ability to lead his normal life. In our judgment, both the cir-
> cuit court and the Court of Appeals erred. Although a *seri-*
> *ous* effect is not required, *any* effect does not suffice either.
> Instead, the effect must be on one's *general* ability to lead
> his normal life. Because the Supreme Court believes that
> neither of the lower courts accurately addressed this issue,
> the case is remanded to the Court of Appeals for it to con-
> sider whether plaintiff's impairment affects his general abil-
> ity to lead his normal life. [*Id.* at 884-885 (emphasis in
> original).]

After consideration of the Supreme Court's order, we
again reverse the trial court's judgment granting
defendants' motion for summary disposition.

This case arose from a traffic accident that
occurred on September 19, 1999, when defendant
Phillip M. Collette, driving a car owned by him and
defendant Teresa M. Heil-Wylie, turned onto a street
in front of plaintiff, who was driving his motorcycle.
As a result of the collision, plaintiff suffered injuries
to his nondominant left hand. In particular, he was
diagnosed with a "closed left fifth metacarpal dis-

placed neck fracture," known less formally as a "boxer's fracture," as well as open wounds, including extensor tendon injuries, to his middle and ring fingers. Plaintiff underwent outpatient surgery twice, once to repair the damage to his left hand and again to remove the pins that were placed in his hand during the initial surgery. Plaintiff also wore a cast for a time, attended physical therapy, and has a continuing inability to completely straighten out his middle finger and to completely close his left hand.

The no-fault act generally abolished tort liability with regard to the use of a motor vehicle. MCL 500.3135(3). But a statutory exception to this general rule provides that tort liability remains for noneconomic loss if the injured person suffered "serious impairment of body function." MCL 500.3135(1). Whether a person suffered a serious impairment of body function is a question of law for the court to decide where, as here, there is an absence of an outcome-determinative genuine factual dispute regarding the nature and extent of the injuries. MCL 500.3135(2); *Kern v Blethen-Coluni*, 240 Mich App 333, 341-342; 612 NW2d 838 (2000). In addition, we review de novo a trial court's decision regarding a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).

MCL 500.3135(7) defines "serious impairment of body function" as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." Accordingly, the existence of an impairment of an important body function is measured by an objective standard and the effect of the impairment on the

injured person is measured by a subjective standard. The parties do not dispute that plaintiff's injuries were objectively manifested or that the injuries impaired the use of plaintiff's hand, an important body function. The question at issue is whether plaintiff's injuries affected his *general* ability to lead *his* normal life. In this regard, the trial court erred in applying an objective standard, citing *Walker v Caldwell,* 148 Mich App 827; 385 NW2d 703 (1986), a case that was decided before the 1995 amendments of the no-fault act,[2] which defined "serious impairment of body function."

As the Supreme Court emphasized in its order in *Kreiner, supra* at 885, although "a *serious* effect is not required, *any* effect does not suffice either. Instead, the effect must be on one's *general* ability to lead his normal life." (Emphasis in original.) In measuring the effect of the impairment on the injured person's general ability to lead his or her normal life, it is appropriate to compare the person's "lifestyle before and after the accident." *May v Sommerfield (After Remand),* 240 Mich App 504, 506; 617 NW2d 920 (2000).

Defendants assert that we incorrectly concluded in our prior decision in this case that plaintiff suffered a serious impairment of body function where his injuries prevented him from temporarily performing the "single, specific activity" of guitar playing. Defendants misread our conclusion, one that we reiterate here. First, we note that an injury does not need to be permanent in order to constitute a serious impairment of body function. *Kern, supra* at 343.

---

[2] 1995 PA 222.

Second, our finding that plaintiff's injuries affected his general ability to lead his normal life is not based on one factor, but rather many. We read the Supreme Court's order as instructing us to consider all aspects of plaintiff's life, including employment, home life, relationships, daily activities, and recreational activities. See also *Kreiner v Fischer (On Remand)*, 256 Mich App 680, 689; 671 NW2d 95 (2003). Before the accident, plaintiff worked full-time as a cable lineman. For about three years preceding the accident, plaintiff also played the bass guitar in a band that performed almost every weekend, on both Friday and Saturday nights, and practiced three to four days a week. Additionally, plaintiff lived alone and was solely responsible for maintaining his house and property, and performing personal tasks.

As a result of his injuries, plaintiff completely lost the use of his left hand for three months. Plaintiff was off work as a cable lineman until he returned to work part-time in November 1999, with instructions from his doctor not to use his left hand. Plaintiff's injuries also prevented him from playing the guitar, and he could not perform or had significant difficulty performing household and personal tasks, such as washing dishes, doing yard work, and showering and dressing himself, until December 1999. In addition, plaintiff had difficulty operating his "bow shop" and processing deer during the 1999 deer hunting season. Plaintiff returned to work full-time as a cable lineman on December 14, 1999, but was unable to play in the band until mid-January 2000 because he "didn't have the strength in [his] fingers. They wouldn't work." When plaintiff did begin to play the guitar again, he had to change his finger formation to accommodate

his inability to completely straighten his left middle finger.

Therefore, not only was plaintiff's ability to work as a cable lineman and bass guitar player affected, but his ability to perform everyday household tasks and operate his bow shop were significantly affected as well. Our emphasis regarding plaintiff's guitar playing should not be construed as constituting the sole reason supporting our conclusion that plaintiff suffered a serious impairment of body function. But it is a factor in our determination in this case because of its significance in plaintiff's life. Although plaintiff had a "day" job, playing in the band was no less an integral part of plaintiff's life. As this Court stated in *Kreiner (On Remand)*, *supra* at 688, "Employment or one's livelihood, for a vast majority of people, constitutes an extremely important and major part of a person's life. Whether it be wrong or right, our worth as individuals in society is often measured by our employment." As the *Kreiner* Court also recognized, "injuries affecting the ability to work, by their very nature, often place physical limitations on numerous aspects of a person's life." *Id.* at 689. We are not suggesting that any injury sustained in a motor vehicle accident that results in a plaintiff losing the ability to work constitutes "serious impairment of body function." But we are cognizant of the reality, as was this Court in *Kreiner (On Remand)*, *supra*, that such an injury, "under the right factual circumstances, can be equated to affecting [a] person's *general* ability to lead his or her normal life." *Id.* at 688 (emphasis in original). We find that these circumstances exist here.

In this case, plaintiff lost the use of his left hand for three months, which significantly affected plaintiff's

general ability to lead his normal life given the work and tasks that he performed before the accident "in his normal life." And so, we conclude as a matter of law that plaintiff suffered "serious impairment of body function" as defined by MCL 500.3135(7). Accordingly, the trial court erred in granting summary disposition in favor of defendants and we remand this case to the trial court for further proceedings.

Reversed and remanded. We do not retain jurisdiction.