*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* EVAN BENFORD.

---

SHEILA BENFORD,

        Petitioner-Appellee,

v

EVAN BENFORD,

        Respondent-Appellant.

UNPUBLISHED
May 6, 2021

No. 354404
Washtenaw Probate Court
LC No. 20-000460-MI

---

Before: JANSEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

Respondent appeals as of right the probate order requiring mental health treatment for respondent under MCL 330.1401(1)(a) and (b). We affirm.

## I. BACKGROUND

This case arises from a mental health petition that was filed by respondent's mother, Sheila Benford. The petition alleged that respondent's mental health situation made it reasonably likely that respondent would harm himself or others. The petition alleged that respondent walked into his parents' home while enraged and was looking for his father. He later texted the following threats to his father: (1) "You are lucky you weren't there"; (2) "All the power in my words is gone . . . I'd have to kill you to get through to you at this point"; and (3) "Thinking about killing you." Respondent was held in the emergency department of St. Joseph Mercy Hospital in Ann Arbor, Michigan. Petitioner dated the petition July 10, 2020, the hospital received the petition on July 11, 2020, at 10:13 a.m., and the petition was filed with the trial court on July 13, 2020.

The petition was accompanied by a clinical certification from Dr. Peter Emiley. Dr. Emiley signed the clinical certificate on July 10, 2020, at 23:03. Dr. Emiley diagnosed respondent with "anxiety/depression" and ruled out psychosis. Dr. Emiley opined that respondent did not understand the need for treatment and that respondent could not understand the inappropriateness of the comments made to his father.

A second certification was from Dr. Mujahid Khan on July 13, 2020, and was signed at 12:30 p.m.[1] Dr. Khan noted that respondent was mentally ill, likely to harm others, and was unable to attend to basic physical needs. Dr. Khan also noted that respondent required treatment and recommended a combination of inpatient and outpatient treatment.

On July 13, 2020, the trial court ordered Washtenaw County Community Mental Health (WCCMH) to prepare an assessment of the appropriateness of hospitalization or treatment options for respondent. On July 14, 2020, WCCMH recommended hospitalization of respondent for 60 days and noted that St. Joseph Mercy Hospital and other approved hospitals were able to provide treatment.

The trial court held a hearing on the petition on July 15, 2020. Dr. Khan was recognized as an expert and testified that he diagnosed respondent with schizophrenia. Dr. Khan recalled the events that took place between respondent and his father and also testified that respondent punched his father in the face. Dr. Khan further testified that respondent was internally preoccupied, not showering, and not taking care of his ADL's.[2] Dr. Khan opined that respondent could be a threat to someone else and that respondent did not understand his need for treatment.

Respondent testified on his own behalf, after which the trial court found by clear and convincing evidence that respondent was mentally ill and fell under MCL 330.1401(a) and (b). The trial court ordered up to 60 days of hospitalization and up to 180 days of assisted outpatient treatment. This appeal followed.

## II. STANDARD OF REVIEW

On appeal, respondent argues that the trial court erred by failing to properly comply with the 24-hour medical evaluation under MCL 330.1430 and MCL 330.1435, and by failing to notify him of his right to a deferral under MCL 330.1455.

Typically, an appellant must properly preserve his or her claim of error by raising the issue in the trial court. See *Napier v Jacobs*, 429 Mich 222, 227; 414 NW2d 862 (1987). In this case, respondent failed to object to the statutory time requirements and the deferral process, and respondent proceeded with the hearing. Therefore, both issues are unpreserved.

> This Court reviews for an abuse of discretion a probate court's dispositional rulings and reviews for clear error the factual findings underlying a probate court's decision. An abuse of discretion occurs when the probate court chooses an outcome outside the range of reasonable and principled outcomes. A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the

---

[1] Although Dr. Khan did not specify a.m. or p.m. on the form, there appears to be no dispute that it was in fact 12:30 p.m.

[2] ADL is an abbreviation for "activities of daily living." *Merriam-Webster's Collegiate Dictionary* (11th ed).

finding. We review de novo matters of statutory interpretation. The probate court necessarily abuses its discretion when it makes an error of law. [*In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018) (quotation marks and citations omitted)]

This Court reviews unpreserved claims of error in civil cases for plain error affecting the civil litigant's substantial rights. See, e.g., *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000). "To avoid forfeiture under the plain error rule, three requirements must be met: (1) error must have occurred, (2) the error was plain, i.e., clear or obvious, (3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

## III. ANALYSIS

If the plain and ordinary meaning of the language is clear, judicial construction is neither necessary nor permitted. *Pace v Edel-Harrelson*, 499 Mich 1, 7; 878 NW2d 784 (2016). This Court has "repeatedly held that in proceedings to commit persons as mentally ill the statute under which they are committed must be strictly complied with." *In re Wojtasiak*, 375 Mich 540, 544; 134 NW2d 741 (1965). Under MCL 330.1430, a respondent hospitalized under MCL 330.1423 (admission by petition) "shall be examined by a psychiatrist as soon after hospitalization as is practicable, but not later than 24 hours, excluding legal holidays, after hospitalization." Under MCL 330.1435, if a petition is accompanied by one clinical certificate, the trial court shall order the respondent to be examined by a psychiatrist. MCL 330.1435(1). "The examining psychiatrist shall not be the same physician upon whose clinical certificate the patient was hospitalized." MCL 330.1430. Further, the "individual may be received and detained at the place of examination as long as necessary to complete the examination or examinations, but not more than 24 hours." MCL 330.1435(3).

In this case, the petition and the first clinical certification were filed with the hospital on Saturday, July 11, 2020, at 10:13 a.m. The second clinical certification appears to have started at 10:00 a.m.[3] on Monday, July 13, 2020. And the clinical certificate was signed by Dr. Kahn on July 13 at 12:30 p.m. Therefore, the second medical examination was completed approximately 50 to 51 hours after the petition was filed. However, Sunday, July 12, 2020, must be excluded because it was a legal holiday. See MCL 330.1430; see also MCL 330.1400b. Therefore, there was a total of approximately 26 to 27 hours between the petition and completion of the second medical evaluation, which is greater than the 24-hour maximum time allotted by the statute. See MCL 330.1430 and MCL 330.1435(3). Despite that the time discrepancy was only a short period, the 24-hour requirement is clear, and the failure of the trial court to enforce the statutory requirement was plain error. See *Carines*, 460 Mich at 763; *In re Wojtasiak*, 375 Mich at 544.

Nevertheless, we conclude that the plain error did not affect respondent's substantial rights. The two hours did not alter the medical findings, the testimony, or the timing of the hearing on the

---

[3] The form appears ambiguous, as it could be read to state 1:00 or 10:00; however, both parties read it as 10:00 a.m.

petition. Respondent was found to be mentally ill by two independent doctors, and one of those doctors, Dr. Khan, also testified at the petition hearing that respondent was schizophrenic, could harm others, and could not look after himself. Respondent also testified, and the trial court found that he was mentally ill by clear and convincing evidence. The two hours did not alter the evidence that was shown or that would have been shown. Moreover, the two-hour discrepancy does not appear to have affected the timing of the hearing on the petition. On Monday, July 13, 2020, the probate court issued a Notice of Hearing setting the trial for 9:00 a.m. on Wednesday, July 15, 2020. This was well within the seven-day time requirement for such hearings. See MCL 330.1452(1)(a). Therefore, the error was not outcome-determinative. See *Carines*, 460 Mich at 763.

Respondent next argues that he was not given a proper notice and opportunity for a deferral. While we agree that the trial court should have better advised respondent and clarified the deferral process when asked by respondent, we cannot conclude that this error affected respondent's substantial rights.

MCL 330.1455(3) states:

The subject of a petition under section 434 who is hospitalized pending the court hearing, within 72 hours after the petition and clinical certificates have been filed with the court, shall meet with legal counsel, a treatment team member assigned by the hospital director, a person assigned by the executive director of the responsible community mental health services program or other program as designated by the department, and, if possible, a person designated by the subject of the petition, in order to be informed of all of the following:

(a) The proposed plan of treatment in the hospital.

(b) The nature and possible consequences of commitment procedures.

(c) The proposed plan of treatment in the community consisting of either an alternative to hospitalization or a combination of hospitalization and assisted outpatient treatment with hospitalization not to exceed 60 days.

(d) The right to request that the hearing be temporarily deferred, with a continuing right to demand a hearing during the deferral period. The deferral period shall be 60 days if the individual chooses to remain hospitalized, or 180 days if the individual chooses outpatient treatment or a combination of hospitalization and outpatient treatment.

In order to take advantage of the deferral, respondent's request to temporarily defer the hearing needed to be on a form provided by the department and signed by respondent in the presence of his legal counsel and filed with the trial court by legal counsel. See MCL 330.1455(6). Once the trial court received the request for a deferral and proper stipulations, it would have granted a deferral. See MCL 330.1455(7).

-4-

In this case, the only evidence on the record regarding respondent's deferral rights were from his testimony, which in pertinent part stated:

> True, but also I was told by my social worker, this is very important. Yesterday I had the option for a deferral, and I was told by my social worker that today I would still have that option for referral.
>
> Also yesterday at the time where I was trying to make a choice regarding to go for a deferral or to go for the court it was very important for me to know whether or not the deferral option would lead—had the option of being turned into voluntary patient status. And I was not getting a clear answer.
>
> That was the very—that was the focus, that was my priority was if I went the deferral route was it possible for me to go from involuntary to voluntary because from the very beginning my interest was—well first it was to be discharged as soon as possible. When that was not an option anymore my option was to okay, sure I'll do the voluntary mission form. I'll go through the process and—you know I'll listen to what you want me to do an—you know until you feel like I'm ready to go.
>
> And I did not get an answer regarding the deferral. I actually got three different answers from my recipient rights advisor. She told me one thing. My social worker told me another thing and lastly my attorney also did not provide me an answer regarding that the deferral would end up as a voluntary patient status option.

Petitioner argues that respondent received proper notice of the deferral on the notice of hearing and advice of rights form. The closest section to advising respondent of his right to a deferral is the paragraph that states, "After consulting with an attorney, you may stipulate to the entry of an order for treatment." However, this section does not explicitly refer to a deferral. And respondent's testimony also does not show that he was given proper notice of his right to a deferral. Although respondent acknowledges that he was told about a deferral, he was told three different answers about the deferral process. Respondent was supposed to be properly notified about the deferral process by several individuals, and the only record evidence appears to show that the trial court did not adequately notify respondent. See MCL 330.1455(3). Especially after respondent requested clarification, the trial court should have paused the hearing to fully explain the deferral process to him.

Petitioner further argues that on the WCCMH "Report on Evaluation of Hospital Treatment and/or Alternative Programs," the social worker complied with the deferral requirements because the report indicated that there was a meeting with respondent's attorney and "SJMH 1 East Swkr." However, we cannot simply assume that the statutory deferral procedure was followed without the proper documentation or a proper record.

Indeed, the trial court plainly erred by continuing the proceedings without respondent having proper notice of his deferral option. See *Carines*, 460 Mich at 763. However, despite the fact that respondent's involuntary treatment triggered his information being entered into LEIN, MCL 330.1464a, we cannot conclude that this error affected respondent's substantial rights

-5-

because there is no evidence to suggest that had respondent been properly notified of his deferral option, he would have exercised that option. Any contrary conclusion would be based on mere speculation, and could not stand.

Affirmed.

/s/ Kathleen Jansen
/s/ Michael F. Gadola