*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BSM.

---

TROOPER DEMNY,

       Petitioner-Appellee,

v

BSM,

       Respondent-Appellant.

UNPUBLISHED
July 13, 2023

No. 363596
Mason Probate Court
LC No. 22-000205-MI

---

Before: RIORDAN, P.J., and MARKEY and YATES, JJ.

PER CURIAM.

At petitioner's behest, the probate court ordered respondent, BSM, to involuntarily undergo mental-health treatment. On appeal, respondent challenges that order, insisting that the trial court failed to comply with MCL 330.1438, which requires two clinical certificates within 24 hours of involuntary hospitalization for mental-health treatment. Beyond that threshold issue, respondent argues that she did not meet the statutory requirements for involuntary hospitalization and that the trial court should have considered alternative treatment options. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of a law-enforcement response to respondent's mental-health crisis on October 5, 2022. Respondent was blessing the flowers in the Meijer garden center and undressing in the parking lot. During a police officer's interaction with respondent, respondent commented that she wanted to be with her deceased "baby daddy" and she was having an out-of-body spiritual awakening. She stated that she wanted to light the room on fire, go be with her lord, and live with and see her dog. The police officer escorted respondent to a hospital and had respondent evaluated by a physician at the emergency department. On October 6, 2022, respondent was hospitalized as a result of the police officer's petition and the physician's recommendation.

Dr. Punett Singla, a board-certified psychiatrist, evaluated respondent on October 7, 2022. On the basis of his evaluation of respondent, his review of the notes from respondent's emergency-room visit, and a clinical certification accompanying the petition for mental-health treatment, Dr.

-1-

Singla diagnosed respondent as suffering from a "bi-polar disorder" with her "most recent episode [being] manic severe with psychotic features." During Dr. Singla's evaluation, respondent told him she was living in her car and that she had not slept for eight to nine days. Respondent further disclosed that she would hit things to prove a point to get what she wanted. Respondent admitted that she had had "at least one past psychiatric hospitalization" and she had been on anti-psychotic and anti-depressant medications in the past.

At the hearing on the petition, Dr. Singla testified that he believed respondent to be a danger to herself, and he had concerns about her inability to perform activities of daily living and function in reality as well as her psychotic state. Dr. Singla referred to respondent's conduct at the hospital and detailed how it could have endangered others because respondent was agitated and physically aggressive. Dr. Singla also noted that respondent disclosed that she was undressing in the parking lot and that respondent was observed walking around in her underwear in her unit in the hospital. Dr. Singla explained that respondent had insight regarding her need for treatment, but did not fully understand her diagnosis, was constantly trying to get out of the hospital, and refused to take her medications. Dr. Singla further testified that the lack of medication could have exacerbated this specific incident, and respondent had little insight regarding her illness and treatment. Dr. Singla observed that hospitalization was the least restrictive form of placement for respondent. Dr. Singla commented that respondent was doing well in treatment, that she had significantly improved, and that when respondent first started seeing him, she would not have been able to sit in the same room with him. The discharge plan included getting respondent back to her baseline. Once the manic episode was over, respondent would be placed back into the community with outpatient follow-up and case management.

Respondent testified on her own behalf and explained that she understood she had bipolar disorder and needed to take medications. Respondent even admitted that she had thrown things. Providing insight into her situation, respondent explained that she was homeless and living in her car. She stated that she had to put bags over her windows because she was unable to trust anyone and that "they are all against [her]." Furthermore, she stated that she wanted to be released to see her children and her emotional-support dog. Respondent also stated that she was perfectly capable of taking care of her finances.

The trial court found, by clear and convincing evidence, that respondent required mental-health treatment. The trial court explained that respondent was unable to consistently perform her activities of daily living. The trial court acknowledged that respondent had insight into her need for treatment, but she had tried to avoid treatment multiple times. The trial court determined that respondent met the governing statutory requirements and found that respondent was a person who required treatment under MCL 330.1401(1)(a) and MCL 330.1401(1)(b). The trial court further found, by a preponderance of the evidence, that a treatment program that required hospitalization was adequate to meet respondent's needs and to prevent harm that she may inflict on herself in the future. The trial court ordered hospitalization for up to 60 days and subsequent assisted outpatient treatment for no longer than 180 days. Respondent now appeals.

## II. LEGAL ANALYSIS

On appeal, respondent contends that the trial court failed to comply with MCR 330.1438, which requires two clinical certificates within 24 hours of hospitalization. Respondent also argues

that respondent did not meet the statutory requirements for hospitalization and that the trial court should have considered alternative treatment options, including respondent's emotional-support animal. We shall address these arguments in turn.

## A. DISMISSAL ON THE BASIS OF MCL 330.1438

Respondent contends that the case should have been dismissed because clinical certificates were not filed within the statutory time period prescribed by MCL 330.1438. But respondent did not present that argument in the trial court, so we must review respondent's unpreserved claim for plain error affecting substantial rights. See *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000). To constitute plain error, an error must have occurred, it must have been clear or obvious, and it must have affected substantial rights. *Id*. Thus, respondent must show that the error affected the outcome of the proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Proceedings for an order of involuntary mental-health treatment under the Mental Health Code, MCL 330.1001 *et seq*., based upon mental illness are called civil-commitment proceedings. *In re Portus*, 325 Mich App 374, 382; 926 NW2d 33 (2018). To order involuntary hospitalization, MCL 330.1438 requires the trial court to act as follows:

> If it appears to the court that the individual requires immediate assessment because the individual presents a substantial risk of significant physical or mental harm to themself in the near future or presents a substantial risk of significant physical harm to others in the near future, the court may order the individual hospitalized and may order a peace officer to take the individual into protective custody and transport the individual to a preadmission screening unit designated by the community mental health services program. After the individual is taken into protective custody by a peace officer, the court may, also, order a security transport officer to transport the individual to a preadmission screening unit designated by the community mental health services program. *If the preadmission screening unit authorizes hospitalization*, the peace officer or security transport officer must transport the individual to a hospital designated by the community mental health services program, unless other arrangements are provided by the preadmission screening unit. *If the examinations and clinical certificates of the psychiatrist, and the physician or the licensed psychologist, are not completed within 24 hours after hospitalization, the individual must be released*. [Emphasis added.]

A respondent hospitalized under MCL 330.1423 (admission by petition) "shall be examined by a psychiatrist as soon after hospitalization as is practicable, but not later than 24 hours, excluding legal holidays, after hospitalization." MCL 330.1430. When a petition "is accompanied by [only] 1 clinical certificate, the court shall order the individual to be examined by a psychiatrist." MCL 330.1435(1). The individual may be "detained at the place of examination as long as necessary to complete the examination . . . , but not more than 24 hours." MCL 330.1435(3).

In this case, the responding law-enforcement officer completed a petition for mental-health treatment for respondent on October 5, 2022. The petition was accompanied by only one clinical

certificate from a physician at the emergency department of the hospital where the officer brought respondent. Respondent was thereafter hospitalized at 1:00 p.m. on October 6, 2022, based on the recommendation of the petition and the one clinical certificate by the physician. Dr. Singla, who is a psychiatrist, examined respondent at 12:20 p.m. on October 7, 2022, and signed the second clinical certificate at 12:40 p.m. on October 7, 2022.[1] Accordingly, the second clinical certificate was completed just shy of 24 hours after respondent was hospitalized. Respondent insists that the 24-hour time period should have started running once respondent was at the hospital, rather than when the petition was received by the hospital. We disagree. The time stamp signifying the *filing* of the petition and the first clinical certificate at the hospital marks the proper starting point for the 24-hour deadline. Thus, the petition for mental-health treatment and clinical certificates satisfied the requirements prescribed by MCL 330.1438.

### B. RESPONDENT IS A "PERSON REQUIRING TREATMENT"

According to the Mental Health Code, MCL 330.1427(1), "[i]f a peace officer observes an individual conducting himself or herself in a manner that causes the peace officer to reasonably believe that the individual is a person requiring treatment, the peace officer may take the individual into protective custody and transport the individual to a preadmission screening unit designated by a community mental health services program for examination under [MCL 330.1429] or for mental health intervention services." Under MCL 330.1401(1), a "person requiring treatment" means:

> (a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

> (b) An individual who has mental illness, and who as a result of that mental illness is unable to attend to those of his or her basic physical needs such as food, clothing, or shelter that must be attended to in order for the individual to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs.

A respondent may qualify as a "person requiring treatment" under either of those subsections of MCL 330.1401(1) to justify an order for mental-health treatment. "Mental illness" is defined as a "substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g). The judge or jury must find that a person requires treatment by clear and convincing evidence. MCL 330.1465. "Evidence is clear and convincing if it 'produces a firm belief or conviction as to the

---

[1] Dr. Singla documented on the clinical certificate that he met with respondent at 12:20 p.m. for 35 minutes, which would result in a 12:55 p.m. end time for his evaluation. But Dr. Singla signed the clinical certificate at 12:40 p.m., and respondent's record of hospitalization reflects 12:40 p.m. as the time of completion. Regardless, either time of signing falls within 24 hours of respondent's hospitalization at 1:00 p.m. on October 6, 2022.

truth of the allegations to be established[.]' " *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020).

Here, the trial court found two bases to conclude that respondent was a "person requiring treatment," citing MCL 330.1401(1)(a) and MCL 330.1401(1)(b). Respondent acknowledged that she has a mental illness. But respondent argues that the probate court did not have the information necessary to determine that she posed a substantial risk of harm to herself or others. Furthermore, respondent asserts that the record did not establish, by clear and convincing evidence, that she was unable to attend to her basic physical needs. We reject both of those arguments.

Respondent was found in a manic state of psychosis in a store open to the public, and she was eventually diagnosed with bipolar disorder by two medical professionals. Respondent made several statements about wanting to be with people who were deceased and specifically stated that she wanted to light the room on fire. It was later determined that respondent was prescribed, and knowingly stopped taking, medications despite her awareness that she needed them. Additionally, respondent was severely agitated and prone to physical aggression, which she admitted using when she wanted something. We conclude that the evidence presented to the trial court provided clear and convincing evidence that respondent could reasonably have been expected to intentionally or unintentionally seriously physically injure herself without treatment, as expressly contemplated by MCL 330.1401(1)(a).

Similarly, the trial court did not err by finding that respondent also qualified as a "person requiring treatment" under MCL 330.1401(1)(b). At the time of respondent's psychotic episode, she was living in her vehicle. Respondent also conceded she had not slept for eight to nine days. Respondent admitted to undressing in a public parking lot and trying to cover her windows because she did not trust anyone. And respondent voluntarily stopped taking her medications even though she knew that she needed to take them. More importantly, respondent's voluntary abstinence from her medications resulted in a very public psychotic episode. The evidence showed that respondent could not attend to her basic needs and required intervention to avoid serious harm in the future.

Respondent claims that her emotional-support animal and her insight regarding her bipolar disorder were not considered. We conclude that the trial court had sufficient evidence to find that respondent was a "person requiring treatment" under subsections (a) and (b) of MCL 330.1401(1). The trial court had evidence that respondent had an emotional-support animal and that respondent had some insight regarding her diagnosis. The trial court had the opportunity to consider all of the evidence, yet it still found that respondent met the requirements for mental-health treatment under MCL 330.1401(1)(a) and MCL 330.1401(1)(b). Because we have no basis to reject the trial court's findings, we must uphold its conclusion that respondent is a "person requiring treatment" pursuant to the Mental Health Code.

C. TREATMENT ALTERNATIVES

Respondent contends that the trial court shirked its statutory duty to consider alternatives to hospitalization before rendering its dispositional ruling. Once a trial court receives a "petition for a determination that an individual is a person requiring treatment," accompanied by two clinical certificates, the court "shall order a report assessing the current availability and appropriateness for the individual of alternatives to hospitalization, including alternatives available following an

initial period of court-ordered hospitalization." MCL 330.1453a. After reviewing that report, the trial court must perform the following tasks:

(a) Determine whether a treatment program that is an alternative to hospitalization or that follows an initial period of hospitalization is adequate to meet the individual's treatment needs and is sufficient to prevent harm that the individual may inflict upon himself or herself or upon others within the near future.

(b) Determine whether there is an agency or mental health professional available to supervise the individual's treatment program.

(c) Inquire as to the individual's desires regarding alternatives to hospitalization. [MCL 330.1469a(1).]

Here, a report on alternative mental-health treatment was furnished to the trial court before disposition. A licensed social worker submitted the report referring to independent mental-health professionals and agencies and provided a recommendation for treatment for case management, psychiatric services, life-skills training, counseling, and substance-abuse services. Specifically, the social worker recommended hospitalization for up to 60 days and posthospitalization treatment for up to 180 days. The social worker explained that her recommendation was based on respondent presenting suicidal thoughts as well as statements respondent made about wanting to be with her deceased "baby daddy." The social worker referred to respondent's comments about having an out-of-body spiritual awakening, wanting to set the room on fire, and wanting to be with her lord. The social worker also referred to respondent's living conditions. Based on her experience in the field, the social worker recommended hospitalization, believing that a hospital would appropriately and adequately provide treatment because it had treated similar symptoms in the past. The social worker additionally recommended an agency for outpatient treatment upon respondent's release from hospitalization. Based on that report and all other evidence presented, the trial court ordered respondent to spend no more than 60 days hospitalized and subsequent outpatient treatment for the remaining period after hospitalization up to 180 days, which was consistent with the guidelines set forth in MCL 330.1472a(1)(a) to (1)(c).

We conclude the trial court appropriately considered alternatives for treatment. The social worker's report cited details about respondent's statements during the incident that prompted the petition and during respondent's psychiatric evaluations. The report was completed on a form that was approved by the State Court Administrative Office, and the recommendation aligned with the treatment recommended by both medical professionals who evaluated respondent. Additionally, the trial court was able to hear testimony regarding respondent's ongoing treatment and the gradual improvements that she was making despite initial disturbances in her treatment. Respondent even testified but did not offer any alternative options for treatment besides an agreement that she would take her medications if released. Therefore, we conclude that the trial court had the required report and other evidence needed to consider treatment alternatives and did not err by failing to consider alternatives to hospitalization before issuing its dispositional ruling. Furthermore, the trial court's order complied with the statutory standards limiting the duration of hospitalization and outpatient treatment. See MCL 330.1472a(1)(a) to (c). In sum, the trial court properly handled every aspect of this case.

Affirmed.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Christopher P. Yates