*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* FOOTE/GRASSMAN-FOOTE, Minors.

UNPUBLISHED
March 16, 2023

No. 364225
Newaygo Circuit Court
Family Division
LC No. 21-009518-NA

Before: M. J. KELLY, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court order terminating his parental rights to the minor children under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and MCL 712A.19b(3)(j) (reasonable likelihood child will be harmed if returned to parent). We affirm.

The three minor children were removed from respondent's care when he and the children's mother left the children with a nonrelative in an unsuitable home.[1] Respondent was on probation at the time, violated probation by testing positive for amphetamine and methamphetamine, and a bench warrant was issued for his arrest. He was sentenced to an in-patient drug rehabilitation program. The initial barriers to reunification were respondent's substance abuse, maintaining safe and stable housing, and his incarceration. After he was released from rehab, he was offered services to rectify these issues. However, he continued to test positive for illegal drugs, he resided with his parents, and did not verify his employment by the time of the termination hearing. Thus, his parental rights were terminated.

---

[1] The children's mother was a respondent in this case, and her parental rights were terminated, but she is not a party to this appeal.

## I. REASONABLE EFFORTS

Respondent contends that the Michigan Department of Health and Human Services (DHHS) did not make reasonable efforts at reunification by failing to offer sufficient services. We disagree.

To preserve an argument that petitioner failed to provide reasonable efforts toward reunification, the respondent must "object or indicate that the services provided to them were somehow inadequate." *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). The time for asserting the need for accommodation in services is when the court adopts a service plan or soon afterward. *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502 and 358503); slip op at 2. "However, even if a parent does not object or otherwise indicate that the services provided were inadequate when the initial case services plan is adopted, such an objection or challenge may also be timely if raised later during the proceedings." *Id*. Respondent did not object or otherwise indicate that the services provided were inadequate throughout the proceedings. Because this issue is unpreserved, it is reviewed for plain error affecting substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000) (quotation marks and citation omitted).

Generally, "when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005). "The [trial] court is not required to order the agency to initiate proceedings to terminate parental rights if . . . [t]he state has not provided the child's family . . . with the services the state considers necessary for the child's safe return to his or her home, if reasonable efforts are required." MCL 712A.19a(8)(c). Although the DHHS "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. "Not only must respondent cooperate and participate in the services, [he] must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). This Court has explained that a "contention that reasonable services were not offered ultimately relates to the issue of sufficiency." *In re Fried*, 266 Mich App at 541.

Respondent emphasizes that he engaged in several services without the assistance of his caseworker. However, respondent's decision to seek services independently does not compel the conclusion that petitioner's reunification efforts were not reasonable. See *id*. at 543. Contrary to respondent's assertion, the record reflects that the services offered to respondent included a referral to Community Mental Health (CMH), random drug screening, supervised parenting time, family team meetings, and a referral for Section 8 housing.

From the beginning of this case, respondent absconded from probation and had an outstanding bench warrant for his arrest. He refused to provide the DHHS with his location. For reasons outside its control, the DHHS could not provide respondent with services when respondent was a probation absconder and when he was sentenced to residential rehabilitation treatment at

Tri-Cap. After respondent was released from Tri-Cap in May 2022, his caseworker started offering respondent drug screenings during parenting-time visits and was attempting to sign up respondent for counseling through CMH. When respondent told his caseworker that the local CMH would not return his calls because of an overdue bill, she attempted to refer him to Ludington and Lake County CMH, whose services respondent failed to engage.

Respondent argues that his caseworker should have provided drug screening more frequently. However, upon his release from Tri-Cap, drug screenings were offered during parenting-time visits and amounted to a test approximately every other week before the trial court held that the DHHS no longer had to provide services to respondent. Respondent's caseworker timed these screenings with parenting-time visits. Any failure to provide more frequent testing was due to respondent's failure to participate in parenting-time visits.

Additionally, respondent argues that the DHHS did not help respondent verify his employment or assist in finding housing. These assertions are not supported by the record. His caseworker made several requests to respondent to verify his employment and never received it. Beyond repeatedly asking respondent for verification, there is little more that the caseworker could do to verify his employment without respondent's cooperation. As to housing, respondent's caseworker helped him get a Section 8 voucher. Respondent was rejected from Section 8 housing because he failed to turn in required paperwork. Respondent cannot blame the DHHS for his own failure to turn in paperwork.

Finally, respondent argues that the DHHS failed to provide respondent with adequate parenting time. At the start of this case, on the record, respondent refused parenting time because he wanted to deal with his bench warrants before seeing his children. The trial court left open the option for respondent to participate in supervised parenting time. By the December 2021 dispositional hearing, respondent had not yet participated in parenting time. Respondent expressed interest in parenting time, but he remained an absconder from probation. After this hearing, respondent entered Tri-Cap and was not released until May 2022. By the June 2022 statutory review hearing, respondent had participated in several parenting-time visits by phone and had his first in-person visit with his children. After this hearing, respondent was not consistent with his parenting-time visits. Respondent canceled one appointment in June and failed to show for another. His caseworker attempted to reschedule these visits. This record does not reflect that the DHHS offered inadequate parenting time. Instead, it shows that respondent failed to consistently attend and that his caseworker attempted to reschedule these missed appointments to accommodate him. Ultimately, respondent failed to uphold his commensurate responsibility to participate in the services offered. See *In re Frey*, 297 Mich App at 248.

## II. STATUTORY GROUNDS

Respondent argues that the trial court clearly erred by finding that clear and convincing evidence supported that the alleged statutory grounds were met. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App at 139. This Court reviews the trial court's determination for clear error. *Id.*; MCR 3.977(k). "A finding of fact is clearly erroneous if the reviewing court

has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). The trial court need only establish one statutory ground by clear and convincing evidence to terminate parental rights. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

The trial court did not clearly err by finding that the statutory grounds for termination were established by clear and convincing evidence under MCL 712A.19b(3)(c)(*i*). Termination under MCL 712A.19b(3)(c)(*i*) is appropriate when the

> parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . [t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The principal conditions that led to adjudication were respondent's substance abuse, criminality, and a lack of appropriate housing. An investigation into respondent and the mother of the children was initiated when one of the children was born testing positive for methamphetamine. The investigation revealed that both parents used methamphetamine and the home was inhabitable for the children. Glass and debris were strewn across the floor, and there was no access to water. The investigation also revealed that the parents had left their children in the care of an acquaintance.

Respondent was a probation absconder. During the pendency of this case, respondent was arrested on a bench warrant and sentenced to residential care at Tri-Cap. At Tri-Cap, respondent participated in various courses on substance abuse. The DHHS provided respondent with supervised parenting-time visits by phone. After respondent left Tri-Cap, the DHHS started in-person supervised parenting-time visits with respondent. Within weeks of leaving Tri-Cap, respondent tested positive for cocaine, methamphetamine, and amphetamine. Respondent continued to test positive for methamphetamine and amphetamine over several more drug screenings. Beyond respondent's relapse, he failed to engage in mental-health services, provide verification of his employment when asked by his caseworker several times, and presented no proof that his parents' house where he was residing was suitable for his children.

A year into these proceedings, the DHHS sought to terminate respondent's parental rights. Respondent had failed to resolve his substance-abuse and criminality issues. Upon release from his sentence in Tri-Cap, respondent started abusing drugs almost immediately. He failed to show that he had a verifiable source of income or suitable housing. The evidence established that respondent failed to address any of these barriers over the 12 months in which he was in a service plan with the DHHS and that each of these conditions would continue to exist. See MCL 712A.19b(3)(c)(*i*).

Because we conclude that the trial court did not clearly err as to Subsection (3)(c)(*i*), we need not address Subsection (3)(j). See *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012) ("Only one statutory ground for termination need be established.").

-4-

### III. BEST INTERESTS

Respondent also argues that the trial court clearly erred by finding that a preponderance of the evidence supported that termination was in the children's best interests. We disagree.

After the trial court determines that at least one of the statutory grounds has been met, the trial court must also find by a preponderance of the evidence that termination is in the children's best interests before it can terminate parental rights. *In re Moss*, 301 Mich App at 90. This Court reviews the trial court's findings regarding the child's best interests for clear error. *In re Trejo*, 462 Mich 341, 357-358; 612 NW2d 407 (2000).

"[T]he focus at the best-interest stage has always been on the child, not the parent." *In re Moss*, 301 Mich App at 87. The trial court may consider such factors as "the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other considerations include the length of time the child was in foster care or placed with relatives, the likelihood that "the child could be returned to [his or] her parent's home within the foreseeable future, if at all," and compliance with the service plan. *In re Frey*, 297 Mich App at 248-249. Additionally, the trial court may consider a parent's substance-abuse problems in its best-interests analysis. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001).

The evidence established that termination of respondent's parental rights was in the children's best interests. The record showed that respondent interacted well with his children during parenting-time visits. However, respondent had seen his children only a few times over the past year. Respondent showed little to no progress on any of his barriers, and the instability and lack of permanency affected his children's mental and emotional well-being. Instead, his children's placement with a foster family provided them with the stability and permanency they needed. Therefore, the trial court did not err by terminating respondent's parental rights to the children.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Thomas C. Cameron