*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BROOKE KRUEGER,

        Plaintiff-Appellee,

V

TREVOR JOHN CURLER,

        Defendant-Appellant.

UNPUBLISHED
June 18, 2026
9:30 AM

No. 376973
Ionia Circuit Court
LC No. 2024-036490-DS

Before: REDFORD, P.J., and WALLACE and LIEVENSE, JJ.

PER CURIAM.

In this child-custody dispute, defendant-father, Trevor Curler, appeals by leave granted[1] the trial court's order affirming the referee's recommendations to grant plaintiff-mother, Brooke Krueger, primary physical custody and both parties joint legal custody of their minor child, KC, and establishing a parenting-time schedule. We affirm.

## I. FACTUAL BACKGROUND

Plaintiff and defendant were not married, and KC is their only child. When KC was born, and during the first three years of KC's life, plaintiff and defendant lived together at defendant's parents' house. During that time, plaintiff worked, and defendant did not, and both provided care to KC, though they disagreed on the respective extent of each other's care for KC. Plaintiff and defendant eventually separated, and in 2023, plaintiff moved out of defendant's parents' house. Plaintiff and defendant initially shared a 50-50 custody arrangement of KC; however, this agreement was never formalized in writing.

In July 2024, plaintiff filed a complaint for support from defendant, and the prosecutor's office referred the case to the Friend of the Court to resolve issues of custody, parenting time, and child support. After the referral, plaintiff and defendant agreed to a temporary parenting-time

---

[1] *Krueger v Curler*, unpublished order of the Court of Appeals, entered January 16, 2026 (Docket No. 376973).

arrangement that provided, in relevant part, that defendant would have parenting time with KC every other weekend and for a few hours after school each Wednesday. From August 2024 to December 2024, plaintiff and defendant followed this agreement. Defendant did not always exercise his opportunity for a midweek visit with KC. In December 2024, the parties agreed to an amended order that gave defendant additional parenting time on Wednesdays to Thursday mornings each week.

From December 2024 to March 2025, the referee held three evidentiary hearings to resolve all outstanding issues related to custody and parenting time. During these hearings, defendant presented evidence and argued that he should be awarded sole custody of KC. Subsequently, in April 2025, the referee entered a written recommendation finding that, on the basis of the evidence, a custodial environment had been established with plaintiff and to a "lesser extent with defendant." Because an established custodial environment existed with both parents, the referee determined that the applicable burden of proof to change custody and parenting time was clear and convincing evidence, and defendant had the burden of proof because he was seeking to reduce plaintiff's parenting time.

Regarding the best-interest factors, the referee determined that they either weighed in favor of neither plaintiff nor defendant, both plaintiff and defendant, or just plaintiff. Accordingly, the referee recommended that plaintiff have physical custody of KC and the parties share joint legal custody. The referee adopted the parenting-time schedule from the amended order from December 2024; the referee recommended that defendant have parenting time on alternating weekends, every Wednesday after school until Thursday before school, and alternating holidays. The trial court adopted the referee's recommendations as an interim order. The order specified that either party could file an objection within 21 days; however, no party did so. In June 2025, the trial court entered an order making the interim order a final order.

Defendant now appeals.

## II. ADMISSION OF TESTIMONY OF AUTISM DIAGNOSIS

Defendant first argues that the referee abused her discretion when she allowed plaintiff to testify that KC had been diagnosed with autism at the evidentiary hearings because it was inadmissible hearsay evidence. We agree that the trial court erred, in part, but any error was harmless.

This Court reviews "for an abuse of discretion the trial court's decision to admit or exclude evidence, but preliminary legal questions regarding the admissibility of evidence are reviewed de novo." *Kuebler v Kuebler*, 346 Mich App 633, 653; 13 NW3d 339 (2023). We also review de novo "the interpretation and application of statutes, court rules, and the rules of evidence." *Id*. "A trial court abuses its discretion if its decision results in an outcome outside the range of principled outcomes." *Varran v Granneman*, 312 Mich App 591, 621; 880 NW2d 242 (2015).

"The Michigan Rules of Evidence apply to referee hearings." MCR 3.215(D)(1). See also, *Kuebler*, 346 Mich App at 654 (the rules of evidence apply to child-custody disputes, with certain exceptions). As such, defendant had "the right to have the trial court decide this custody dispute in accordance with the rules of evidence and the principles that govern the means of obtaining

proof . . . ." *Watson v Watson*, 204 Mich App 318, 321; 514 NW2d 533 (1994). "Generally, under the rules of evidence, all relevant evidence is admissible unless excluded by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court." *Kuebler*, 346 Mich at 654-655 (quotation marks and citation omitted).

Pursuant to MRE 802, "[h]earsay is not admissible unless these rules provide otherwise." " 'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." MRE 801(c).

On appeal, defendant challenges the admission of testimony "regarding a diagnosis of autism without corroborating evidence from a medical professional." But the trial court cannot have abused its discretion in admitting that testimony because defendant forfeited the argument when he did not object when other witnesses testified to similar information, in a sense opening the door to testimony of plaintiff's belief that KC had autism. During direct examination of defendant's mother, defense counsel asked whether she had spoken to plaintiff about plaintiff's belief that KC had autism. She said that she had. Defense counsel then asked if she knew whether KC had been diagnosed autistic, and she responded not to her knowledge. Defense counsel not only did not object to the witness's testimony of defendant's mother's knowledge of whether KC had been "diagnosed," he affirmatively elicited such testimony. Then, upon cross examination, the witness agreed that she received a text message from plaintiff stating that KC had been diagnosed with autism. Defense counsel did not object to this question or answer.

Next, during direct examination by plaintiff's counsel, plaintiff's fiancé testified that he had "first-hand knowledge" of KC's autism diagnosis because he was involved with the "autism testing." He also testified that plaintiff provided special care to KC because of his condition. Defense counsel did not object to this testimony, which occurred before plaintiff testified.

Then, during her direct examination, plaintiff testified that KC's autism diagnosis required her to provide special care for him. Defense counsel objected at least three times during the direct examination on the ground that any autism diagnosis was speculative without corroborating medical evidence and that her testimony regarding an autism diagnosis was hearsay. The referee noted the initial objection without explicitly stating that it was overruled but allowed plaintiff to continue testifying regarding KC's autism diagnosis. After defense counsel's third objection, the referee instructed him not to interrupt every time and that his "objection will stand." During this portion of her testimony, plaintiff testified that a psychiatrist diagnosed KC with autism, that the diagnosis impacted how she parented, and that she had informed defendant that KC had the diagnosis. On cross-examination, when asked whether she testified on direct examination about her son's suspected or possible autism diagnosis, she replied, "[h]e's diagnosed." Defense counsel attempted to impeach plaintiff about the issue by asking her to concede that she was not offering any physician testimony or medical records in support of her claim that KC was diagnosed with autism. Plaintiff agreed that a doctor was not going to testify at the hearing and admitted that she did not bring any medical records to the hearing.

Later, during plaintiff's case, plaintiff's counsel called defendant as a witness and asked whether he disagrees that KC has an autism diagnosis, to which defendant said, "I believe it's hearsay." Defense counsel again objected, arguing that "there is no testimony, proper testimony,

legally-admissible testimony, that would withstand an appeal that this child has autism." The trial court overruled the objection on the basis that plaintiff had personal knowledge of the diagnosis. Defendant then testified that he disagrees with the assertion that KC has an autism diagnosis. Then, during examination by his counsel, defendant was asked whether there were any issues in parent-teacher conferences regarding KC's academics. He responded that KC "has been doing academically very well, above average. He scored perfect on all of his reading, testing, his mathematics, his counting, everything that they're teaching there. He's been doing very well. He's been socializing very well, is what his teacher said, and making lots of friends and hasn't had no issues in that area."

As noted above, defendant first introduced the idea of plaintiff's belief that KC suffered from autism. Certainly, plaintiff's subsequent testimony in response as to her state of mind and personal knowledge on the issue of her son's potential medical diagnoses is relevant to the best interest factors in this case, specifically MCL 722.23(c), because it pertained to plaintiff's capacity and disposition to provide the child with medical care and other needs. Her testimony in that regard was not hearsay under MCR 801(c) because it was admitted for a proper nonhearsay purpose: plaintiff made the statement while testifying at the hearing, i.e., she testified why she believed KC had autism and how that impacted her parenting. Plaintiff's testimony that she believed KC suffered from autism was both relevant and not hearsay, so it was admissible.

Defendant also first introduced evidence of whether KC had been *diagnosed* with autism when he examined his first witness, defendant's mother, on that very issue. A documented autism diagnosis of KC would be relevant to this child custody matter—clearly such a diagnosis would be relevant to MCL 722.24(c), at a minimum. However, the assertion that KC was, in fact, diagnosed by a qualified medical professional with autism was hearsay to the extent it was offered to prove that fact. First, a medical professional diagnosing KC with autism would be a "statement" under MRE 801(a), which defines statement as "a person's oral assertion, written assertion, or nonverbal conduct if the person intended it as an assertion." Second, the statement was "hearsay" under MRE 801(c) because the declarant did not make the statement while testifying at the hearing and plaintiff offered the statement to prove that KC was diagnosed as autistic, and the court accepted it as such. Certainly, plaintiff could have admitted medical evidence under a hearsay exception, such as MCR 803(6), through a "record of an act, transaction, occurrence, event condition, opinion or diagnosis," if that record met with the requirements of that rule. Plaintiff did not do so.[2] Thus, the trial court erred, in part, by overruling defendant's objection to plaintiff's statement that KC was diagnosed by a psychiatrist with autism without additional evidence.

As a result, the trial court erred by finding that KC was diagnosed with autism, since no qualified medical expert testified under MRE 702 and a medical record was not admitted supporting the diagnosis.

However, we find that the error was harmless. See *Horazdovsky v Horazdovsky*, unpublished per curiam opinion of the Court of Appeals, issued March 5, 2026 (Docket No.

---

[2] We note that plaintiff attempted to expand the record on appeal by filing an exhibit, consisting of a one-page document, but she never moved this Court for leave to expand the record and we will, therefore, not consider it.

376242), pp 4-5 (admission of hearsay evidence at a child custody hearing was harmless error because it was not outcome-determinative).[3]  As detailed below, and contrary to defendant's argument on appeal, the trial court made only one finding of fact against defendant regarding the autism diagnosis, in the last sentence of its opinion addressing factor (c) of the best interest factors, related to the parties' capacity to provide medical and other care.  But in that same section, the court also found that "even when the parties lived together and plaintiff was the only parent who was employed, she is the one who brought the child to medical appointments and continues to do so."  The only other finding in that section of the court's opinion was neutral, stating "both parties are currently employed and can provide for the child's material needs."  Because the court's findings are supported by the record, the evidence regarding factor (c) did not "clearly preponderate[]" in defendant's direction. *Plachta v Plachta*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 374260); slip op at 4 ("A trial court's findings regarding the best-interest factors should be affirmed unless the evidence clearly preponderates in the opposite direction.").  Thus, factor (c) favored plaintiff even without the autism diagnosis finding, and so the court's error in admitting plaintiff's testimony alone to prove KC's diagnosis was not outcome determinative. *Horazdovsky*, unpub op at 4-5.

## III.  THE TRIAL COURT APPLIED THE CORRECT LEGAL STANDARD

Defendant next argues that the referee erred when she determined that an established custodial environment existed with both him and plaintiff, and that the clear-and-convincing-evidence standard therefore applied to reduce plaintiff's parenting time, which would have changed KC's established custodial environment.  We disagree.

We apply "three standards of review in custody cases" depending on the circumstances. *Plachta*, ___ Mich App at ___; slip op at 2.  "All custody orders must be affirmed on appeal unless the circuit court's findings were against the great weight of evidence, the circuit court committed a palpable abuse of discretion, or the circuit court made a clear legal error on a major issue." *Id*. (quotation marks and citation omitted).  "A trial court commits clear legal error on a major issue when it incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citation omitted).  We are deferential to a trial court's determinations in custody proceedings because the trial court is in the superior position to accurately discern whether a custody arrangement is in a child's best interests. *Sabatine v Sabatine*, 513 Mich 276, 285; 15 NW3d 204 (2024).

When resolving disputes under the Child Custody Act, "[t]he threshold determination is whether an established custodial environment exists." *Marik v Marik*, 325 Mich App 353, 361; 925 NW2d 885 (2018).  MCL 722.27(1)(c) provides as follows:

> The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort.  The age of the child, the physical

---

[3] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Kennard v Liberty Mut Ins Co*, 341 Mich App 47, 53 n 2; 988 NW2d 797 (2022) (quotation marks and citation omitted).

environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

"An established custodial environment may exist in more than one home and can be established as a result of a temporary custody order, in violation of a custody order, or in the absence of a custody order." *Marik*, 325 Mich App at 361.

"Whether an established custodial environment exists dictates the evidentiary burden applicable to the parent seeking to alter a child's environment." *Kuebler*, 346 Mich App at 670. "If no established custodial environment exists, the trial court may change custody if it finds, by a preponderance of the evidence, that the change would be in the child's best interests." *Id*. (quotation marks and citation omitted). "However, when an established custodial environment does exist, a court is not to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." *Id.* (quotation marks and citation omitted). "This clear-and-convincing-evidence standard also applies when there is an established custodial environment with *both parents*." *Id*. (citation omitted).

Here, the referee found an established custodial environment primarily with plaintiff and also with defendant, a finding defendant not only does not contest, but he concedes the facts necessary to support the referee's decision. Even so, he argues that the burden of proof as to the best-interest factors in this case should have been a preponderance of the evidence. But our case law provides that if there is a custodial environment established with both parents, then the clear-and-convincing-evidence standard applies. *Foskett v Foskett*, 247 Mich App 1, 8; 634 NW2d (2001); *Bofysil v Bofysil*, 332 Mich App 232, 243; 956 NW2d 544 (2020); *Kuebler*, 346 Mich App at 670. Accordingly, the trial court applied the correct standard. *Id*.

IV.  BEST-INTEREST FINDINGS

Defendant argues that the referee's findings as to the best-interest factors (b), (c), (d), (e), (f), (h), (j), and (k) under MCL 722.23 were against the great weight of evidence because the evidence clearly favored himself rather than plaintiff. We disagree.

Generally, an issue is not properly preserved if it is not raised before or decided by the trial court. *Marik*, 325 Mich App at 358. Here, this issue is unpreserved because defendant did not object to the referee's custody recommendations, which included her findings as to the best-interest factors, within 21 days as required by MCL 552.507(4) and MCR 3.215(E)(4) before they were formally adopted by the trial court. *Rivette v Rose-Molina*, 278 Mich App 327, 328; 750 NW2d 603 (2008). "Review for an unpreserved error is limited to determining whether a plain error occurred that affected substantial rights." *Id*. (citation omitted). " 'To avoid forfeiture under the plain-error rule, three requirements must be met: (1) an error must have occurred; (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights.' " *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000), quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Even if the issue had been preserved, our review is limited and as stated earlier, "[a]ll custody orders must be affirmed on appeal unless the circuit court's findings were against the great weight of evidence, the circuit court committed a palpable abuse of discretion, or the circuit court

made a clear legal error on a major issue." *Plachta*, ___ Mich App at ___; slip op at 2. For that analysis, we look to whether the trial court analyzed the best-interest factors listed in MCL 722.23(a) to (*l*) applying the proper burden of proof, and whether it stated on the record its findings for each factor. *Kuebler*, 346 Mich App at 67. However, a trial court "need not necessarily engage in elaborate or ornate discussion because brief, definite, and pertinent findings and conclusions regarding the contested matters are sufficient." *Foskett*, 247 Mich App at 12. (citations omitted). These principles apply equally to a referee's analysis of the best-interest factors. See *Rivette*, 278 Mich App at 332-333. As noted previously, "[a] trial court's findings regarding the best-interest factors should be affirmed unless the evidence clearly preponderates in the opposite direction." *Plachta*, ___ Mich App at ___; slip op at 4 (quotation marks and citation omitted).

Here, we see no error regardless of whether defendant had preserved the issue, as the trial court's findings were not against the great weight of the evidence.

Factor (b) considers the "capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). In the present case, the referee found that this factor favored both plaintiff and defendant. Defendant disagrees, arguing that the referee failed to fully consider one of his exhibits containing a 2022 video that showed plaintiff sitting on her phone and vaping while KC cried, and a video of plaintiff's father's house that showed pill bottles and drug paraphernalia. But defendant has failed to articulate how these videos, which capture isolated incidents of possible neglect, establish a pattern of harmful behavior. At any rate, there is no indication that the referee did not consider these videos and the testimony about them, and they do not establish that the evidence "clearly preponderates in the opposite direction." *Plachta*, ___ Mich App at ___; slip op at 4 (quotation marks and citation omitted).

Moreover, there was significant testimony by plaintiff and others that demonstrated how plaintiff loved KC and provided him with guidance and affection. The referee saw and considered all the evidence to find that this factor favored both plaintiff and defendant. Because there is evidence to support the trial court's findings, we defer to the trial court's credibility and factual judgments. See *Sabatine*, 513 Mich at 285.

Factor (c) considers the "capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). The referee found that this factor favored plaintiff, noting that both parties were employed and could provide for KC's material needs, but the financial burden had been primarily on plaintiff, that only plaintiff brought KC to medical appointments, and that "[t]he child has been diagnosed with autism and defendant's only contribution to the support and treatment of the diagnosis is to passively deny that it is accurate."

Defendant argues that factor (c) favored him because KC's autism diagnosis was based on hearsay and uncorroborated, and the referee erred by faulting him for denying the diagnosis. As already discussed, any error regarding the admission of the fact that KC was diagnosed was harmless. And while there is some evidence in defendant's favor, including that he provided KC with food and clothing and that KC had come to him from plaintiff's care unbathed and with dirty

underwear, the referee heard all the testimony and ultimately found this factor favored plaintiff. Again, we defer to the referee's credibility determination and factual judgment because there is evidence to support her findings. See *Sabatine*, 513 Mich at 285.

Factor (d) requires consideration of the "length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). Here, the referee found that this factor favored plaintiff, noting that plaintiff lived with her fiancé in a home they were planning to purchase for about a year and that it appeared to be safe and stable. The referee also noted that it was unclear whether defendant lived with his parents or his girlfriend, and, although defendant's parents' home was familiar to KC, it was not clear whether KC was familiar with defendant's girlfriend's house.

Defendant argues that this factor should have favored him because he provided for KC the first three years of KC's life while plaintiff was out "drinking and partying" and because the trial court did not consider how many times plaintiff moved. Our review of the record provides little, if any, direct factual support for defendant's assertions that plaintiff went out "drinking and partying" or that plaintiff moved excessively, and the referee heard testimony about plaintiff and her fiancé's current house and plans to purchase the house soon.

As properly noted by the referee, it was not clear whether KC would stay with defendant at defendant's parents' house or at defendant's girlfriend's house. There was some testimony indicating that defendant would stay with his parents when he had KC. But there was also testimony that KC would sleep over at defendant's girlfriend's house, that KC would share a room with defendant's girlfriend's son, and that defendant planned at some point to move in with his girlfriend. Further, there was little testimony about the girlfriend's home, indicating a lack of evidence establishing that the girlfriend's home was a stable and satisfactory environment, much less an environment that would be a stable environment in the future. There was also testimony that, even when plaintiff worked for the first three years of KC's life, she still cared for KC when she was not working, and that defendant did not care for KC alone. We defer to the referee's credibility determination regarding this testimony. *Sabatine*, 513 Mich at 285.

Factor (e) considers the "permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). The referee found that this factor favored plaintiff, finding that plaintiff's home appeared stable and consisted of plaintiff, her fiancé, and KC. The referee also noted defendant and KC's close relationship, including with his extended family, but it was not clear if the proposed home would be with defendant's parents' or girlfriend. Defendant believes this factor should have favored him because "the testimony was truly clear where he would be staying" and defendant repeats his claim that he cared for KC while plaintiff "was out drinking and partying." Defendant's argument is not supported by the record so as to change the outcome as to this factor.

Factor (f) considers the "moral fitness of the parties involved." MCL 722.23(f). In the present case, the referee found that this factor favored both plaintiff and defendant, specifically noting that neither party had a "significant criminal history or is otherwise morally unfit." While defendant argues that this factor favored him, again citing the alleged failure to consider the videos and "extensive testimony" of plaintiff's earlier behavior, the referee heard all the testimony about plaintiff's parenting of KC from 2022 to 2024, and there is no indication that the referee did not

consider defendant's videos and photographs. Instead, the referee heard the relevant testimony, saw the exhibits, and reasonably found that this factor favored both parties.

Factor (h) considers the "home, school, and community record of the child." MCL 722.23(h). The referee determined that this factor favored plaintiff because she lived in the local school district, both parties agreed that KC was doing well in school, and plaintiff was more engaged in KC's schooling. Defendant argues that this factor favored him because KC "had barely started school" and defendant's testimony "showed he was engaged with his son; he was not the one ignoring him and blowing vape smoke in his face." In defendant's favor, there was testimony that he helped KC with homework and attended school functions, but there was also testimony to the contrary. Ultimately, we defer to the trial court's credibility determinations. *Sabatine*, 513 Mich at 285. Relying on the testimony presented, the trial court evidently found the balance of the testimony weighed in plaintiff's favor.

Factor (j) requires consideration of the "willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent." MCL 722.23(j). Here, the referee found that this factor favored neither party. Specifically, the referee noted that there was evidence that plaintiff withheld KC from defendant for some period, and that defendant repeatedly called plaintiff an unfit parent but offered very little evidence in support of his allegations. Further, there was testimony and exhibits that defendant at times failed to respond to plaintiff's communications, as well as testimony that plaintiff was unwilling to share with defendant information about KC's appointments. Defendant argues that this factor should have favored him, but the record supports the referee's finding that factor (j) favored neither parent.

Factor (k) considers "domestic violence, regardless of whether the violence was directed against or witnessed by the child." MCL 722.23(k). The referee found that this factor favored neither party because both had imperfections: plaintiff had pushed defendant one time during their relationship, and defendant had physically threatened plaintiff's fiancé and verbally abused and threatened plaintiff. Once again, the record supports the referee's conclusion.

Ultimately, a review of the evidence presented as to each of the contested factors reveals that the referee's determinations regarding the best-interest factors were not against the great weight of evidence, and that the referee did not commit clear legal error. *Plachta*, ___ Mich App at ___; slip op at 2. Because the referee did not err, the trial court did not err by adopting the referee's findings and recommendation. Consequently, the trial court did not plainly err. *Kern*, 240 Mich App at 336.

Affirmed.

/s/ James Robert Redford
/s/ Randy J. Wallace
/s/ Andrew J. Lievense